SIDNEY M. WOLINSKY (CA BAR NO. 33716) (swolinsky@dralegal.org)
MARY-LEE K. SMITH (CA BAR NO. 239086) (msmith@dralegal.org)
ZOE CHERNICOFF (CA BAR NO. 274545 ) (zchernicoff@dralegal.org)
KARA JANSSEN (CA BAR NO. 274762) (kjanssen@dralegal.org)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, CA 94704-1204
Telephone:     (510) 665-8644
Facsimile:     (510) 665-8511

LAURA FAER (CA BAR NO. 233846) (lfaer@publiccounsel.org)
POONAM JUNEJA (CA BAR NO. 300848) (pjuneja@publiccounsel.org)
PUBLIC COUNSEL
2001 Center Street, Fourth Floor
Berkeley, CA 94704-1204
Telephone:     (510) 529-3419
Facsimile:     (510) 529-3491

DANIEL S. MASON (CA BAR NO. 54065) (dmason@zelle.com)
PATRICK B. CLAYTON (CA BAR NO. 240191) (pclayton@zelle.com)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.F., by and through her guardian ad litem, Gail F.; W.B.; and Q.G.; on behalf of themselves and a class of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONTRA COSTA COUNTY; CONTRA COSTA COUNTY OFFICE OF EDUCATION,<br><br>Defendants. | Case No.  C-13-03667 MEJ<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS**<br><br>Date:   July 23, 2015<br>Time:   10:00 AM<br>Place:  Courtroom B1, 15th Floor<br>Judge: Magistrate Judge James<br>Trial Date:  None Set |

# TABLE OF CONTENTS

I.     Introduction ................................................................................................ 1

II.    Statement of Facts ...................................................................................... 3

    A.    Background of the Case and Procedural History ............................. 3

        1.    Federal Court Proceedings ................................................... 3

        2.    Administrative Court Proceedings ....................................... 4

    B.    Settlement Negotiations ................................................................... 5

III.   Summary of the Settlements ...................................................................... 6

    A.    Agreement with Defendant Contra Costa County ........................... 6

        1.    Room Confinement ............................................................... 6

        2.    Expert Review of Disability-Related Policies ...................... 7

        3.    Multi-Disciplinary Teams .................................................... 8

        4.    Attendance at Individualized Education Plan Meetings ....... 8

        5.    Duration of the Agreement, Monitoring and Reporting ........ 9

        6.    Dispute Resolution and Continuing Jurisdiction of the
              Court ..................................................................................... 9

        7.    Attorneys' Fees and Costs .................................................. 10

    B.    Agreement with Defendant Contra Costa County Office of
       Education ........................................................................................ 10

        1.    Expert Review of Educational Policies ............................... 10

        2.    ADA Coordinator ............................................................... 11

        3.    Coordination with the Contra Costa County Probation
              Department ......................................................................... 11

        4.    Duration of Agreement, Monitoring and Reporting ........... 12

        5.    Dispute Resolution and Continuing Jurisdiction of the
              Court ................................................................................... 12

        6.    Attorneys' Fees and Costs .................................................. 12

IV.    General Provisions in Both Agreements .................................................. 12

        1.    Release of Claims ............................................................... 12

        2.    Notice ................................................................................. 13

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

       3.      Class Action Fairness Compliance ............................................... 13

V.    Legal Argument .......................................................................................... 14

    A.    The Proposed Class......................................................................... 14

    B.    The Proposed Class Meets the Numerosity, Commonality, Typicality, and Adequate Representation Requirements of Rule 23(a) ................................................................................................. 14

        1.      The Proposed Class Satisfies the Numerosity Requirement.................... 14

        2.      The Proposed Class Satisfies the Commonality Requirement.................................................................... 15

        3.      The Class Representatives Satisfies the Typicality Requirement.................................................................... 16

        4.      The Class Representatives and Counsel Satisfies the Adequacy Requirement................................................... 17

    C.    The Proposed Class Meets the Requirements of Rule 23(b)(2)........................... 19

    D.    Preliminary Approval of the Proposed Settlement Agreements is Proper ......................................................................................... 20

        1.      The Settlement Provides Substantial Benefits to the Class While Avoiding Unnecessary Litigation and Delay. ............................... 21

        2.      The Agreements Should be Approved Given the Discovery Completed and Quality of the Negotiations........................... 22

        3.      The Settlements were Crafted by Experienced Counsel for Both Plaintiffs and Defendants ................................. 23

    E.    The Court Should Direct Distribution of the Notice of Settlement ..................... 23

    F.    The Court Should Approve the Proposed Scheduling Order................................ 25

VI.   Conclusion ................................................................................................. 25

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ............................................ 16, 17

*Bates v. United Parcel Serv.,*
   204 F.R.D. 440 (N.D. Cal. 2001) ....................................... 14

*Battle v. Liberty Nat. Life Ins. Co.,*
   770 F. Supp. 1499 (N.D. Ala. 1991) ................................... 20

*Cervantez v. Celestica Corp.,*
   253 F.R.D. 562 (C.D. Cal. 2008) ....................................... 15

*Christanberg Garment C. v. E.E.O.C.,*
   434 U.S. 412 (1978) ..................................................... 9

*Comer v. Cisneros,*
   37 F.3d 775 (2d Cir. 1994) .............................................. 19

*Contra Costa County v. Barbara C.,*
   Civil Case No. C14-00268 MEJ ..................................... 10, 13, 18

*Contra Costa County v. CiCi C.,*
   Civil Case No. C14-00269 MEJ ..................................... 10, 13, 18

*Contra Costa County v. Gail F.,*
   Civil Case No. C14-00270 MEJ ..................................... 10, 13, 18

*Gen. Tel. Co. of the N.W. v. EEOC,*
   446 U.S. 318 (1980) ..................................................... 15

*Genesis Healthcare Corp. v. Symczyk,*
   133 S. Ct. 1523 (2013) .................................................. 18

*Gray v. Golden Gate Nat'l Recreational Area,*
   279 F.R.D. 501 (N.D. Cal. 2011) ....................................... 19

*Handberry v. Thompson,*
   446 F.3d 335 (2d Cir. 2006) ............................................. 16

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .............................. 15, 16, 17, 20, 21, 23

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ........................................... 17

*Hernandez v. Cnty. of Monterey,*
   Case No. 5:13-cv-2354-PSG, 2014 U.S. Dist. LEXIS 138247 (N.D. Cal. 2014).............. 18

*Hernandez v. Cnty. of Monterey,*
   Case No. 5:13-cv-2354-PSG, 2015 U.S. Dist. LEXIS 11396 (N.D. Cal. 2015)......... 15, 18, 19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Horton v. Merrill Lynch*,
    855 F. Supp. 825 (E.D.N.C. 1994)................................................................ 20

*La Duke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) ................................................................ 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................ 20

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ................................................................ 20

*Morget v. Applus Techs., Inc.*,
    Case No. 1:13-cv-01801-JLT, 2015 U.S. Dist. LEXIS 27185 (E.D. Cal. 2015).................. 20

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................ 16, 19

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
    59 F. Supp. 2d 1021 (N.D. Cal. 1999) ........................................................ 23

*Touhey v. United States*,
    Case No. 08-01418-VAP, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. 2011) ...................... 23

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980)........................................................................ 18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................... 15, 19

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .............................................................. 19

*Wang v. Chinese Daily News*,
    737 F.3d 538 (9th Cir. 2013) ............................................................... 15

**Statutes**

20 U.S.C. § 1400........................................................................... 4

28 U.S.C. § 1715(b)....................................................................... 13

29 U.S.C. §794............................................................................ 3

42 U.S.C. § 12101......................................................................... 3

Cal. Educ. Code § 56000 ................................................................ 4, 16

Cal. Gov't Code § 11135 ................................................................ 4, 16

**Rules**

Federal Rule of Civil Procedure 23(a) .......................................... 1, 3, 14, 19

Federal Rule of Civil Procedure 23(a)(1) .................................................. 14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Federal Rule of Civil Procedure 23(a)(2) ............................................................ 15

Federal Rule of Civil Procedure 23(a)(3) ............................................................ 16

Federal Rule of Civil Procedure 23(a)(4) ............................................................ 17

Federal Rule of Civil Procedure 23(b) ................................................................ 19

Federal Rules of Civil Procedure 23(b)(2) ..................................................... passim

Federal Rule of Civil Procedure 23(c)(2). .......................................................... 24

Federal Rule of Civil Procedure 23(e) ........................................................... 20, 23

Federal Rule of Civil Procedure 23(e)(2) ............................................................ 20

Federal Rule of Civil Procedure 23(g) ................................................................ 18

Federal Rule of Civil Procedure 23(h)(1) ........................................................... 24

**Treatises**

William Rubenstein, *Newberg on Class Actions* §3:12 (5th ed. 2011) ................... 15

Conte & Newberg, *Newberg on Class Actions* § 7:24 (5th ed. 2012) ........................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on July 23, 2015[1] or as soon thereafter as the matter may be heard, Plaintiffs G.F., by and through her guardian ad litem Gail F., W.B, and Q.G., on behalf of themselves and a class of those similarly situated, move the Court for (i) preliminary approval of the proposed class settlement agreements ("the Agreements") submitted herewith and incorporated herein by reference in the above-captioned matter; (ii) an order certifying the proposed settlement class under Federal Rule of Civil Procedure 23(a) and b(2), and appointing class representatives and class counsel; (iii) an order directing notice to the proposed settlement class; and (iv) a scheduling order setting deadlines for objections and setting a fairness hearing. In support of this motion, the Plaintiffs state: (1) the Agreements represent a comprehensive settlement of the issues raised in the above-captioned case; (2) the Agreements offer a fair and equitable result to those affected by it; and (3) the Agreements will result in significant long-term benefits for members of the proposed settlement class.  Defendants Contra Costa County and Contra Costa County Office of Education do not oppose this motion.

**RELIEF SOUGHT**

Plaintiffs respectfully request that the Court enter the attached proposed order: (1) conditionally certifying a settlement class for injunctive relief; (2) appointing G.F., by and through her guardian ad litem Gail F., W.B, and Q.G as class representatives; (3) appointing Disability Rights Advocates and Public Counsel as Class Counsel; (4) granting preliminary approval of the Agreements; (5) directing the proposed form of notice to the settlement class; and (6) setting a schedule for notice to the class, objections, and a fairness hearing for final approval.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This lawsuit and the proposed settlement agreements address allegations of discrimination against a proposed class of youth with disabilities who are detained, or will be

---

[1] The parties are concurrently filing a Stipulated Request for Order Changing Time on the instant motion.

detained in the future, at the John A. Davis Juvenile Hall ("Juvenile Hall") located in Martinez, California.  The lawsuit was initially filed in August of 2013 on behalf of three youth, G.F., W.B., and Q.G. ("Plaintiffs"), against Contra Costa County ("County"), whose Probation Department ("Probation") operates the Juvenile Hall, and the Contra Costa County Office of Education ("CCCOE") (collectively, "Defendants"), [2] which operates the Mt. McKinley School within the Juvenile Hall.  The settlements that have been reached with CCCOE ("CCCOE Agreement") and with the County ("County Agreement") (collectively, the "Agreements") (attached hereto as Exhibits A and B, respectively, to the Declaration of Mary-Lee Smith in support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Smith Decl.")) are the culmination of almost a year of hard fought litigation and another year of intensive settlement negotiations.  The result is one of the most sweeping sets of settlements addressing the needs of young people with disabilities in California's county juvenile halls and in the nation.  These settlements can and will result in models for other county juvenile halls in the state and juvenile facilities nationwide.

While Defendants deny all liability, they have agreed to make significant policy changes and to allow third party experts to recommend and implement further changes as deemed necessary.  Specifically, the Agreements will prohibit the use of room confinement for all youth, not just those with disabilities, for reasons other than the safety of the youth or others in Juvenile Hall.  In addition, the Agreements will ensure that youth with disabilities receive the special education they need and to which they are entitled.  The Agreements will also require substantial coordination between the County Probation Department and CCCOE.  The Agreements reached by the Parties will substantially improve the lives of thousands of youth with disabilities and provide them with the additional resources they need to succeed outside of Juvenile Hall.

The Parties reached agreement only after engaging in vigorous litigation and extensive settlement negotiations.  The settlement negotiations included multiple in-person meetings and teleconferences, the exchange of numerous written proposals, one two-day settlement conference

---

[2] Plaintiffs and Defendants are referred to collectively as the "Parties."

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 in front of Honorable James Warren (Ret.), and six settlement conferences before Magistrate

2 Judge Joseph C. Spero.  Through these efforts, the Parties have reached two settlements that

3 provide relief for the allegations pled in the Complaint.  The Agreements are thorough and take a

4 reasoned approach that includes substantive provisions as well as process-based remedies.

5       The Agreements are conditioned upon certification of the proposed class made up of all

6 youth with disabilities as defined under the Americans with Disabilities Act, 42 U.S.C. § 12101

7 *et seq.*, ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehabilitation Act" or

8 "Section 504") who are currently detained at or who will be detained at the Contra Costa County

9 Juvenile Hall.  The Parties stipulate that certification of the proposed class under Federal Rules

10 of Civil Procedure 23(a) and (b)(2) is appropriate for settlement purposes.  Smith Decl., Ex. A

11 ("CCCOE Agreement"), p. 2, § 3.2.1; Ex. B ("County Agreement"), p. 8, § V(B).

12       By virtue of the Parties' arm's length negotiations, the critical benefits extended to the

13 class, and the avoidance of protracted and unnecessary litigation, this settlement is fair, adequate,

14 and reasonable.  Accordingly, Plaintiffs respectfully request: (1) certification of the proposed

15 class under Federal Rules of Civil Procedure 23(a) and 23(b)(2) ; (2) appointment of G.F., by

16 and through her guardian ad litem Gail F., W.B, and Q.G. as class representatives;

17 (3) appointment of Disability Rights Advocates ("DRA") and Public Counsel as Class Counsel;[3]

18 (4) preliminary approval of the Agreements; (5) an order approving the proposed form of notice

19 to the class of the Agreements; and (6) setting a schedule for notice to the class, objections, and a

20 fairness hearing for final approval.  The Parties' counsel have negotiated and agreed to a

21 proposed form and content for the notice.  *See* Smith Decl. Ex. C ("Proposed Notice").

22 **II.**     **STATEMENT OF FACTS**

23       **A.**     **Background of the Case and Procedural History**

24           1.     Federal Court Proceedings

25       Plaintiffs' original complaint and motion for class certification were filed on August 8,

26 2013.  Dkt. Nos. 1, 9.  Defendants consented to the filing of an amended complaint, and on

27 ───────────────

28 [3] Paul Hastings LLP represented Plaintiffs from August 2013 until March 2014 when they withdrew as counsel.  Dkt. No. 192.  Zelle Hofmann Voelbel & Mason currently represents Plaintiffs but is not seeking to be appointed class counsel.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

December 20, 2013, Plaintiffs filed the First Amended Complaint ("FAC") and, pursuant to court order, refiled their motion for class certification.  Dkt. Nos. 87, 92.  Plaintiffs' FAC alleged that both Defendants violated the ADA, Rehabilitation Act, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), and the California Education and Government Codes, Cal. Educ. Code § 5600 *et seq.* and Cal. Gov't Code § 11135 *et seq.* Plaintiffs alleged that Defendants did so by, among other things, placing youth with disabilities in room confinement[4] without regard for disability, denying educational services, including special education services, to youth with disabilities in room confinement, and providing inadequate special education services to youth with disabilities in the classroom.  Defendants denied and continue to deny all allegations and associated liability.  Plaintiffs filed their motion for class certification with their original complaint, and subsequently re-filed their motion for class certification following the filing of the FAC to protect the interests of the class due to the urgency of the issues and the transitory nature of the Juvenile Hall.  Dkt. Nos. 9, 93.

On January 24, 2014, Defendants filed motions to dismiss the FAC, Dkt. Nos. 113, 118, and on February 7, 2014, they filed their oppositions to Plaintiffs' motion for class certification, Dkt. Nos. 133, 136.  All motions have been fully briefed and pending before Magistrate Judge James since March 2014.  On March 20, 2015 the motions were terminated, for statistical purposes only, due to the fact they were pending for more than a year.  Dkt. No. 273.

### 2.    Administrative Court Proceedings

Plaintiffs filed administrative actions ("due process complaints") on behalf of each Plaintiff concurrently with their original complaint in order to exhaust their administrative remedies.  Due to lack of jurisdiction over statutory provisions outside of the IDEA, the Office of Administrative Hearings ("OAH") dismissed the claims raised in the due process complaints under the ADA, Section 504 and state law, thereby allowing these claims to move forward in federal court.  Dkt Nos. 151-2, 151-3, 151-4.  On October 1, 2013, Plaintiffs settled their individual, non-systemic claims as to CCCOE, Dkt. No. 114-1, Ex. B, and proceedings continued

---

[4] In their pleadings and briefings, Plaintiffs referred to "solitary confinement" and not "room confinement."  For settlement purposes, Plaintiffs no longer use the term solitary confinement but instead use the term room confinement.

against the County.  OAH ultimately found the County subject to the IDEA in certain

circumstances and issued decisions finding the County in violation due to its failure to make the

named Plaintiffs available for educational services when they were in room confinement and

awarding the named Plaintiffs a certain amount of compensatory education.  Dkt. Nos. 120-3,

120-4, 120-5.  All three OAH decisions are currently on appeal and have been related to the

instant matter.  Dkt. Nos. 131, 155.

### B.     Settlement Negotiations

The Parties have been engaged in ongoing settlement discussions, both formal and

informal, for the majority of the duration of this case.  Prior to filing the complaint, Plaintiffs

sent Defendants a pre-litigation demand letter in July of 2013.  Smith Decl. ¶ 12.  Following the

filing, the Plaintiffs met with the County and CCCOE on August 22, 2013 to discuss the

possibility of engaging in settlement negotiations.  *Id.* ¶ 13.  On September 4, 2013, Plaintiffs

made their first written settlement proposal to both Defendants.  *Id.* ¶ 14.  Plaintiffs' counsel also

met with County Counsel and Chief Kader on October 29, 2013 to discuss possible settlement

options.  *Id.* ¶ 15.  In preparation for the settlement conference before Honorable James Warren,

Plaintiffs made their second written settlement proposal to both Defendants on October 29, 2013.

*Id.* ¶ 16.  All parties, including Plaintiffs and both Defendants, met for a two-day in-person

settlement conference before the Honorable James Warren on November 4 and November 7,

2013.  *Id.*  Although the parties were unable to reach agreement at that conference, the parties

continued to discuss settlement options and exchanged written settlement proposals in February

of 2014.  *Id.* ¶ 17.

Additional in-person settlement conferences were held before Magistrate Judge Spero on

August 26, 2014 with CCCOE, and on August 27, 2014 with the County.  *Id.* ¶ 18.  Thereafter,

on September 17, 2014, all parties participated in a telephonic conference with Judge Spero.  *Id.*

¶ 18.  Plaintiffs then met in person with CCCOE on September 29, 2014 and with the County on

September 30, 2014, to further discuss settlement proposals.  *Id.* ¶ 20.  Plaintiffs met with the

County for further in-person settlement conferences before Judge Spero on November 13, 2014,

January 22, 2015, and March 31, 2015.  *Id.* ¶ 21.  Plaintiffs met with CCCOE for a further in-

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

person settlement conference before Judge Spero on November 20, 2014. *Id.* ¶ 22. Plaintiffs also met with CCCOE before a mediator, Robert D. Links, appointed through the Court's Alternative Dispute Resolution Program, on February 24, 2015 to address Plaintiffs' fees and costs. *Id.* ¶ 23. Throughout this final settlement effort, the parties exchanged extensive written proposals in a good faith effort to resolve this dispute and avoid further litigation. *Id.* ¶ 11. The final Agreement with CCCOE was fully executed on May 18, 2015, and the final Agreement with the County was fully executed on May 19, 2015. *Id.* ¶ 24.

## III.   SUMMARY OF THE SETTLEMENTS

### A.   <u>Agreement with Defendant Contra Costa County</u>

#### 1.   <u>Room Confinement</u>

Pursuant to the County Agreement, Probation staff will no longer use room confinement for discipline, punishment, administrative convenience, retaliation, staffing shortages or reasons other than a temporary response to behavior that threatens immediate harm to the youth or others. County Agreement, p. 5, § IV(D)(2). Additionally, Probation staff are prohibited from placing youth in continuous room confinement for longer than four hours. *Id.*, p. 5, § IV(D)(3). Pursuant to the County Agreement, after four continuous hours, staff must return the youth to the general population, develop "special individualized programming" for the youth, or consult with a qualified mental health professional about whether a youth's behavior requires that he or she be transported to a mental health facility. *Id.* As part of the expert review, discussed below, the experts will consider whether and under what conditions it would be appropriate for the youth to remain in room confinement after the initial four hour period as part of special individualized programming. *Id.*, p. 6, § IV(D)(5).

Additionally, under the County Agreement, Probation staff must develop special individualized programming for youth with persistent behavior problems that threaten the safety of youth or staff or the security of the facility and may not use room confinement as a substitute for special individualized programming. *Id.*, p. 5, § IV(D)(4). Special individualized programming includes the development of an individualized plan designed to improve the youth's behavior, which is created in consultation with the youth, Contra Costa County Mental

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Health ("County Mental Health") staff, and the youth's family members, when available.  *Id.*, pp.

2   5-6, § IV(D)(4)(a).  The plan must identify the causes and purposes of the negative behavior, as

3   well as concrete goals that the youth understands and that he or she can work toward to be

4   removed from special programming.  *Id.*, p. 6, § IV(D)(4)(b).  This programming also must

5   include in-person supervision and provision of educational services, as well as a guarantee that

6   the youth will not be denied any of his or her basic rights.  *Id.*, p. 6, § IV(D)(4)(d)-(f).  Further,

7   there must be daily review with the youth of his or her progress toward the goals outlined in his

8   or her plan.  *Id.*, p. 6, § IV(D)(4)(g).

9          2.     Expert Review of Disability-Related Policies

10          Pursuant to the County Agreement, the County will retain Professor Barry Krisberg, as an

11   expert in this matter, and Professor Krisberg will work with Professor Edward Latessa[5] to

12   conduct a review of the County's policies and practices at the Juvenile Hall.  *Id.*, p. 3, § IV(A).

13   Professors Krisberg and Latessa will review policies and practices relating to: (a) room

14   confinement; (b) use of behavior incentives; (c) coordination between CCCOE and the Probation

15   Department, including but not limited to, the County's coordination with CCCOE on CCCOE's

16   implementation of Individualized Education Plans ("IEPs"), 504 Plans, and behavior intervention

17   plans; (d) identification, assessment and tracking of youth with disabilities who are detained at

18   Juvenile Hall and referral systems to identify these youth for CCCOE and County Mental Health;

19   (e) the implementation of Juvenile Detention Alternatives Initiative ("JDAI") standard V.D.4.,

20   which specifies that disability must be considered in determining an appropriate response when

21   assigning consequences.  *Id.*  Pursuant to the County Agreement, following the review by the

22   experts of the above policies and practices, the joint recommendations of Professors Krisberg

23   and Latessa will be submitted to the County and Plaintiffs' Counsel and the County will

24   implement those joint recommendations.  *Id.*, p. 3, § IV(A)(2).  The County Agreement also sets

25   forth a dispute resolution process if the experts do not agree on recommendation(s).  *Id.*, p. 3,

26

27   [5] Professor Krisberg is retained pursuant to the County Agreement to conduct the review of
policies and practices outlined in Section IV(A) of the County Agreement.  County Agreement,

28   p. 3, § IV(A).  The County has separately also retained Professor Latessa as an expert, and the
two experts will work together as outlined in Section IV(A)(2) of the County Agreement.  *Id.*

1 § IV(A)(2)(a)-(e).

2          3.          Multi-Disciplinary Teams

3          Pursuant to the County Agreement, multi-disciplinary team meetings, which must include

4    representatives from Probation, CCCOE, and County Mental Health will be held at least once per

5    month with additional meetings held as needed. *Id.*, p. 4, § IV(B).  Such meetings will address

6    the following subjects:

7          a)    Coordination of responses and interventions for individual youth who are having

8                consistent and/or chronic issues conforming their behavior to expectations, regardless

9                of where or when the behavior occurs;

10         b)    Coordination of the provision of special education and counseling services to all

11               eligible youth on all units;

12         c)    Discussion of provision of a continuum of placements based on the special education

13               needs of youth in Juvenile Hall, including a process for approving and placing

14               children in non-public schools and residential placements outside of the Juvenile Hall.

15         4.          Attendance at Individualized Education Plan Meetings

16         Pursuant to the County Agreement, a Probation staff member will attend IEP meetings

17   when requested to do so, and when the Probation Department has received prior written or oral

18   consent from the education rights holder to attend, when certain conditions are met. *Id.*, p. 4-5, §

19   IV(C)(1)-(2).  These conditions include: (a) where the youth has been removed from the

20   classroom or prevented from attending Mt. McKinley School for more than 9 school days in one

21   school year for disciplinary reasons by the Probation Department and/or CCCOE in response to

22   conduct by the youth; (b) where a youth has been detained in the Juvenile Hall for 30

23   consecutive days or more and a special day class, residential treatment, or a non-public school

24   placement is being recommended or requested as a placement option by CCCOE or the

25   education rights holder for the youth; or (c) where a behavior support/intervention plan is being

26   put in place for youth assigned to the Youthful Offender Treatment Program or the Girls in

27   Motion program or youth who have been detained in the Juvenile Hall for 60 consecutive days or

28   more. *Id.*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

5.   <u>Duration of the Agreement, Monitoring and Reporting</u>

Pursuant to the County Agreement, there will be an initial Implementation Period, which will last for eighteen (18) months, to allow for the experts to conduct their review, issue their report and for the County to train staff and revise policies to implement those recommendations. *Id.*, p. 6, § IV(E).  Following this Implementation Period, there will be a Monitoring Period which will last for twenty four (24) months, with monitoring reports provided to the parties by the experts every six months.  *Id.*

The Parties have agreed to rely on benchmarks to show compliance with the County Agreement during the initial phase of the Monitoring Period.  The benchmark for the compliance with the Agreement at the time of the first and second Monitoring Report will be 70% compliance.  The benchmark for the next year of the Monitoring Period, during which the experts will provide their third and fourth Monitoring Reports, will be 80% compliance. Thereafter and through the conclusion of the Monitoring Period, including the issuance of the fifth and final monitoring report, all units shall be in substantial compliance with the provisions of this Agreement.  *Id.*

6.   <u>Dispute Resolution and Continuing Jurisdiction of the Court</u>

The County Agreement provides for the Court to retain jurisdiction for purposes of approval and enforcement of any award of attorneys' fees and costs, as well for purposes of dispute resolution.  *Id.*, p. 11, § VIII.  To the extent disputes arise regarding the experts' recommendations and/or compliance with this Agreement during the Monitoring Period, the parties will first meet and confer in a good faith attempt to resolve the dispute.  *Id.*, p. 3, § IV(A)(2)(a).  If the Parties are unable to resolve the dispute through the meet and confer process, either Party may submit the matter to Magistrate Judge Spero for purposes of mediation. *Id.*, p. 4, § IV(A)(2)(b).  If the mediation is unsuccessful, the Parties will submit the matter to the Court, and the decision of the Court will be appealable to the Ninth Circuit.  *Id.*, p. 4, § IV(A)(2)(c)-(d).  Attorneys' fees and costs for work performed in conjunction with dispute resolution may be awarded to the prevailing party in accordance with the standard set forth in *Christanberg Garment C. v. E.E.O.C.*, 434 U.S. 412 (1978).  *Id.*, p. 4, § (IV)(A)(2)(e).  If

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Plaintiffs are the prevailing party, the Court may, in its discretion, reduce the amount of

2  attorneys' fees and costs awarded if it determines that the County's position(s) were reasonable,

3  in whole or in part. *Id.*

4          7.    <u>Attorneys' Fees and Costs</u>

5       The County Agreement provides for the payment of $1,340,000 as full and final

6  settlement of all attorneys' fees and costs related to the class action and the named Plaintiffs'

7  individual due process claims, as set forth in *Contra Costa County v. Barbara C.*, Civil Case No.

8  C14-00268 MEJ, *Contra Costa County v. CiCi C.*, Civil Case No. C14-00269 MEJ, and *Contra*

9  *Costa County v. Gail F.*, Civil Case No. C14-00270 MEJ.  *Id.*, pp. 11-12, § IX.[6]

10      **B.**    **<u>Agreement with Defendant Contra Costa County Office of Education</u>**

11          1.    <u>Expert Review of Educational Policies</u>

12       The CCCOE Agreement provides for CCCOE to retain an expert with expertise in: (1)

13  the IDEA; (2) the Rehabilitation Act and the ADA; (3) California state law requirements

14  pertaining to special education; and (4) the operation of juvenile court schools.  CCCOE

15  Agreement, p. 2, § 4.1.1.

16       This expert will conduct a review of CCCOE's policies, procedures and practices in the

17  following areas: (a) Child Find obligations in accordance with the IDEA and related California

18  law and the Rehabilitation Act for youth with suspected disabilities who are detained at John A.

19  Davis Juvenile Hall; (b) development and implementation of IEPs and Section 504 Plans in

20  accordance with the IDEA and related California law and the Rehabilitation Act for all eligible

21  disabled youth detained in Juvenile Hall; (c) discipline in accordance with applicable law for all

22  eligible disabled youth detained in the Juvenile Hall; and (d) the obligations of CCCOE to

---

[6] In addition to the class-wide claims for injunctive relief, the County Agreement also resolves the related cross-appeals from the OAH decisions on the three named Plaintiffs' individual due process administrative complaints.  As a part of the agreement to dismiss those cross-appeals, the County has agreed to pay the three named Plaintiffs a total of $1,140 for the compensatory education awarded to them by an administrative judge in three separate individual due process administrative proceedings, and the named Plaintiffs have released their individual claims for compensatory education against the County.  County Agreement, pp. 10-11, § VI, VII.  These payments do not affect other class members' rights to bring their own claims for compensatory education based on their individual experiences in Juvenile Hall; those claims are specifically carved out and not released in the County Agreement.  *Id.*, p. 10, § VI.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   coordinate with Probation regarding all matters in which CCCOE and Probation have joint or

2   overlapping responsibilities, in accordance with relevant California law. *Id.*, pp. 3-4, § 4.1.7.

3         In order to conduct this review, the expert will be given full and reasonable access to any

4   and all information he or she deems necessary, including at least the following: (1) full access to

5   the areas in which CCCOE operates; (2) the ability to talk with, consult with, and interview staff

6   from CCCOE; (3) the ability to observe youth in the classroom setting, attend IEP meetings with

7   the consent of the educational rights holder, observe youth during other special education related

8   services, except for individual counseling services, and review recordings of IEP team meetings;

9   (4) access to CCCOE records with the exception of private personnel files; and (5) the ability to

10  conduct written surveys of youth detained in John A. Davis Juvenile Hall and to speak with

11  small groups of students as needed. *Id.*, pp. 4-5, § 4.1.8.

12        Based on this review, the expert will develop a report ("Expert Report") which shall

13  include all proposed revisions to policies, procedures, and practices that he or she recommends.

14  *Id.*, p. 5, § 4.1.10.  This report will be completed within six months of the commencement of the

15  expert's review. *Id.*  Following the issuance of the Expert Report, both Plaintiffs and Defendant

16  CCCOE will have an opportunity to challenge any recommendation contained in the report on

17  the basis that it is not required by and/or does not comply with federal and/or state law. *Id.*, p. 5,

18  § 4.1.11.  Once all challenges have been resolved, the report will be adopted and implemented by

19  CCCOE. *Id.*, p. 5, § 4.1.12.

20                2.      ADA Coordinator

21        CCCOE will designate at least one employee at the Juvenile Hall as responsible for

22  coordinating ADA compliance ("ADA Coordinator").  This person will be responsible for

23  ensuring compliance with the ADA generally and for investigating and responding to any ADA

24  complaints. *Id.*, p. 6, § 4.2.1.

25                3.      Coordination with the Contra Costa County Probation Department

26        CCCOE shall use best efforts when implementing the Expert Report to coordinate and

27  cooperate with other authorities operating in and providing services at the Juvenile Hall,

28  including, but not limited to, the County's Probation Department. *Id.*, p. 6, § 4.3.1.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### 4. Duration of Agreement, Monitoring and Reporting

Pursuant to the CCCOE Agreement, following selection of the Expert and drafting and approval of the Expert Report, there will be a twenty four (24) month monitoring term. *Id.*, p. 5, § 4.1.12. During this time, the Expert will provide the parties with monitoring reports on a quarterly basis for the first twelve (12) months and on a semi-annual basis for the following twelve (12) months. *Id.*, p. 6, § 5.2.

### 5. Dispute Resolution and Continuing Jurisdiction of the Court

The CCCOE Agreement provides for the Court to retain jurisdiction for purposes of enforcement and dispute resolution, including enforcement of any award of attorneys' fees and costs, and challenges to the Expert Report or any other disputes between the Parties. *Id.*, p. 10, § 10.1. To the extent disputes arise regarding the Expert Report and/or compliance with the CCCOE Agreement during its term, the parties will first notify each other in writing and meet and confer in a good faith attempt to resolve the dispute. *Id.*, p. 7, § 6.2. If the Parties are unable to resolve the dispute through the meet and confer process, either Party may submit the matter for mediation. *Id.* If the mediation is unsuccessful, the Parties will submit the matter to the Court and the decision of the Court will be appealable in accordance with applicable law. *Id.*

### 6. Attorneys' Fees and Costs

The CCCOE Agreement provides for the payment of $1,165,000 for reasonable attorneys' fees and costs incurred during the course of the lawsuit with $70,000 of this amount put aside to compensate for fees, expenses and costs incurred in monitoring CCCOE's implementation of the Settlement Agreement. *Id.*, p. 11, §§ 12.2 and 12.3.

## IV.   GENERAL PROVISIONS IN BOTH AGREEMENTS

### 1. Release of Claims

The proposed Agreements resolve all claims for injunctive relief brought by Plaintiffs. Except as discussed below, these settlements do not: (1) provide for any monetary relief to be paid to members of the class; (2) release any individual claims for damages, or otherwise affect the rights of class members to pursue individual claims for compensatory education or other individual relief pursuant to the IDEA and/or Section 504 of the Rehabilitation Act; and (3) do

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   not affect any claims for reasonable accommodations related to physical access, communication

2   access, and/or accommodations otherwise relating to hearing, vision and/or mobility disabilities

3   arising under the ADA or the Rehabilitation Act.  County Agreement, p. 10, § VI; CCCOE

4   Agreement, p. 10-11, § 11.  As explained previously, the County Agreement also releases the

5   three named Plaintiffs' individual claims for compensatory education as a resolution of their

6   related individual cases, *Contra Costa County v. Barbara C.*, Civil Case No. C14-00268 MEJ,

7   *Contra Costa County v. CiCi C.*, Civil Case No. C14-00269 MEJ, and *Contra Costa County v.*

8   *Gail F.*, Civil Case No. C14-00270 MEJ.  County Agreement, p. 11, § VII.

9            2.    Notice

10       If the proposed Agreements are preliminarily approved and the proposed class is

11   certified, the parties will initiate notice to the settlement class in the manner approved by this

12   Court within thirty (30) days of the Court's order preliminarily approving the agreement.

13   County Agreement, p. 9, § V(F); CCCOE Agreement, p. 9, § 8.4.12.  Unless the Court orders

14   otherwise, the parties will distribute the parties' proposed joint notice of class action settlement,

15   which includes: a brief statement of the claims released by the Class; the date of the hearing on

16   the Final Approval of the Agreements; the deadline for submitting objections to the Agreements;

17   and the web page, address, and phone and fax numbers that may be used to obtain a copy of the

18   Notice in the format and language requested.  Notice will be posted in prominent places on each

19   of the parties' websites as well as in the lobby and classrooms at the Juvenile Hall.  County

20   Agreement, p. 9, §§ V(F)(b), (c); CCCOE Agreement, p. 9, §§ 8.4.1.3 and 8.4.1.4.  Notice will

21   also be mailed directly by CCCOE to the last known address of the educational rights holder of

22   all youth currently receiving special education services at Mt. McKinley.  CCCOE Agreement, p.

23   9, § 8.4.1.2.

24            3.    Class Action Fairness Compliance

25       Within ten days of the date that the Agreements are filed in the District Court, Defendants

26   will provide notice of the proposed Agreements, as required by the Class Action Fairness Act (28

27   U.S.C. § 1715(b)), to the U.S. Attorney General, California Attorney General's Office, and/or

28   any other necessary parties.  County Agreement, p. 8, § V(D); CCCOE Agreement, p. 8, § 8.3.1.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

V.    **LEGAL ARGUMENT**

A.    **The Proposed Class**

The parties have stipulated to the certification at the time of the Fairness Hearing of a settlement class defined as:

> all youth with disabilities as defined under the ADA and the Rehabilitation Act who are currently detained at or who will be detained at the Contra Costa County Juvenile Hall.

County Agreement, p. 2, § V.B; CCCOE Settlement, p. 2, § 3.2.1. The proposed class is identical to the proposed class definition set out in the FAC and in Plaintiffs' Motion for Class Certification.  Dkt. No. 87, p. 11, ¶ 58; Dkt. No. 93, p. 9.[7]

B.    **The Proposed Class Meets the Numerosity, Commonality, Typicality, and Adequate Representation Requirements of Rule 23(a)**

Plaintiffs assert, and Defendants do not contest for purposes of settlement, that the proposed class satisfies the four threshold requirements for class certification under Rule 23(a). These requirements are (1) numerosity of potential class members; (2) commonality of factual and legal issues among class members; (3) typicality of the class representatives' claims; and (4) adequate representation of class wide interests by representatives and Class Counsel.  Fed. R. Civ. P. 23(a).  Without conceding these requirements and for the purpose of effectuating this settlement, Defendants stipulate to certification of the proposed class for purposes of settlement.

1.    The Proposed Class Satisfies the Numerosity Requirement.

Numerosity requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  No specific number is required, as "whether joinder is impracticable depends on the facts and circumstances of each case." *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001) (citations omitted); *Cervantez v. Celestica Corp.*,

---

[7] The First Amended Complaint also sought certification of a second "compensatory education class" that "consists of all youth who are or were detained at the Contra Costa County Juvenile Hall and are or were eligible for special education since August 8, 2011—two years prior to the filing of the original Complaint in this action." Dkt. No. 87, p. 11, ¶ 59.  No such class has yet been certified.  Plaintiffs do not seek certification of such a class given that the settlements specifically carve out, and do not release, any compensatory education claims on behalf of the absent putative compensatory education class members.  CCCOE Agreement, p. 10, § 11.2; County Agreement, p. 10, § VI.

253 F.R.D. 562, 569 (C.D. Cal. 2008).  "A class or subclass with more than 40 members,

however, 'raises a presumption of impracticability based on numbers alone.'"  *Hernandez v.*

*Cnty. of Monterey*, Case No. 5:13-cv-2354-PSG, 2015 U.S. Dist. LEXIS 11396, at *46-47 (N.D.

Cal. 2015) (quoting 1 William Rubenstein, *Newberg on Class Actions* § 3:12, at 198 (5th ed.

2011)); *see also Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 330 (1980).  "This is

especially true where…the class…include[s] future, unknowable class members."  *Hernandez*,

2015 U.S. Dist. LEXIS 11396, at *47.  Here, numerosity is easily satisfied.  This class contains

at least over forty youth with disabilities currently in Juvenile Hall, several hundred who will

pass through it in the next year, and thousands who will enter it in the future.  Declaration of

Mary-Lee Smith in Support of Plaintiffs' Motion for Class Certification ("Smith Class Cert.

Decl."), Dkt. Nos. 105, 105-1, ¶¶ 5-6, Exs. C, E; *id.* ¶ 8, Ex. H.[8]

### 2.    The Proposed Class Satisfies the Commonality Requirement.

Rule 23(a)(2) requires that there be either questions of fact or law common to the

members of the proposed class.  The Ninth Circuit has "construed" this provision

"permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To satisfy this

requirement, the claims must "depend upon a common contention" such that "determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The requirement,

however, does not necessitate that "every question in the case, or even a preponderance of

questions, is capable of class wide resolution."  *Wang v. Chinese Daily News*, 737 F.3d 538, 544

(9th Cir. 2013).  "So long as there is 'even a single common question,' a would-be class can

satisfy the commonality requirement of Rule 23(a)(2)."  *Id.* (quoting *Dukes*, 131 S. Ct. at 2556)).

---

[8] Between September 2012 and May 2013 alone, Mt. McKinley served 282 students who were
identified as having a disability that required an IEP or 504 plan.  Smith Class Cert. Decl. ¶ 6,
Ex. E, Dkt. No. 105-1.  Mt. McKinley serves approximately 1,300 students annually, *id.*, ¶ 8,
Exh. H, Dkt. No. 105-1, and CCCOE estimates that 23% of these students require special
education, *id.*  Thus, approximately 300 students who have been identified as needing special
education pass through Juvenile Hall annually.  All of these students qualify as youth with
disabilities included in the class definition, because they have disabilities that substantially limit
the major life activity of learning.  These numbers, however, represent only a subset of the
proposed class.  The class encompasses more youth than these 300 youth per year, as the class
includes all youth with disabilities who fall within the definition of disability contained in the
ADA and Section 504, which is broader than that contained in the IDEA.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Courts have consistently held that "in a civil-rights suit, commonality is satisfied where the

2    lawsuit challenges a system-wide practice or policy that affects all of the putative class

3    members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citing *La Duke v. Nelson*,

4    762 F.2d 1318, 1332 (9th Cir. 1985)); *Parsons v. Ryan*, 754 F.3d 657, 681-84 (9th Cir. 2014).

5         In this civil rights action, which focuses on systemic policies and practices which are

6    applied through the Juvenile Hall, the class members' claims share many common questions of

7    fact and law concerning: (1) the educational services, including special education, that they were

8    provided or were not provided by the Defendants, and (2) the facility's disciplinary policies

9    surrounding room confinement, including whether youths' disabilities were or were not taken

10   into account in the disciplinary process.  The class members' claims also share common

11   questions of law concerning the legality of Defendants' policies and practices regarding the

12   disciplinary and educational programs at the Juvenile Hall and whether they violate the IDEA,

13   ADA, Section 504, Government Code sections 11135 *et seq.*, and Education Code sections

14   56000 *et seq.*  Those common questions are sufficient to establish commonality.

15        Under these theories, courts have certified classes in many civil rights actions, including

16   classes of individuals held in detention facilities.  *See, e.g., Armstrong*, 275 F.3d at 854-55, 869

17   (class of prisoners and parolees with sight, hearing, learning, developmental and mobility

18   disabilities who were being discriminated against based on their disabilities in violation of the

19   ADA and section 504 of the Rehabilitation Act); *Handberry v. Thompson*, 446 F.3d 335, 347

20   (2nd Cir. 2006) (addressing a special education class of "all inmates under the age of twenty-one

21   in the custody of the New York City Department of Correction who have not yet received their

22   high school diploma or its equivalent") (internal quotation marks and citation omitted).

23                3.    The Class Representatives Satisfies the Typicality Requirement.

24        Rule 23(a)(3) requires that the "the claims or defenses of the representative parties are

25   typical of the claims or defenses of the class."  "Under the rule's permissive standards,

26   representative claims are typical if they are reasonably co-extensive with those of absent class

27   members; they need not be substantially identical."  *Parsons*, 754 F.3d at 685 (quoting *Hanlon*,

28   150 F.3d at 1020) (internal quotation marks omitted).  "The test of typicality 'is whether other

members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Thus, '[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Id.* (quoting *Hanon*, 976 F.2d at 508) (formatting in original). In a case such as this one, "'the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class.'" *Id.* (quoting *Armstrong*, 275 F.3d at 869).

Here, the proposed representatives' claims are typical of the claims of the Plaintiff class because each named Plaintiff is a youth with a disability who was detained at the Juvenile Hall, and like the absent class members, each named Plaintiff was subjected to the systemic policies and practices there. *See, e.g.*, FAC ¶¶ 3-11; G.F. Decl., Dkt. No. 97; Q.G. Decl., Dkt. No. 98; Cici C. Decl., Dkt. No. 99. Specifically, each named Plaintiff was offered one educational placement, in the general education classroom regardless of disability or prior IEP, denied access to special education and related services when in room confinement, and placed in room confinement without any disability-related inquiry. G.F. Decl., Dkt. No. 97; Q.G. Decl., Dkt. No. 98; Cici C. Decl., Dkt. No. 99. Like the proposed representatives, all members of the Plaintiff Class are being or will be subjected to the systemic policies and practices at Juvenile Hall, and have suffered or will suffer similar injuries as a result. *Armstrong*, 275 F.3d at 869. As such, the typicality requirement is met.

4.   The Class Representatives and Counsel Satisfies the Adequacy Requirement.

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. The adequacy inquiry addresses whether the representatives "have any conflicts of interest with other class members," and if they will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Adequate representation is usually presumed in the absence of contrary evidence. *See* 3 Conte & Newberg, *Newberg on Class Actions*, § 7:24 (5th ed. 2012). Further, "[c]lass representatives have less risk of conflict with unnamed class

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    members when they seek only declaratory and injunctive relief." *Hernandez*, 2015 U.S. Dist.

2    LEXIS 11396, at *69.

3         Plaintiffs share the same interests in declaratory and injunctive relief as the rest of the

4    absent class members, including their common interest in improving the educational and

5    disciplinary programs at the Juvenile Hall and at Mt. McKinley.[9]  Because of their experiences

6    with education and discipline at the Juvenile Hall and the profound, continuing impact that those

7    experiences have had on their lives, they are each passionate about improving access to

8    education at the Juvenile Hall, and they are ready and able to act as effective advocates on behalf

9    of the class.  Smith Decl. ¶ 29.  Their individual pursuit of compensatory services for their

10   alleged injuries has not affected and will not affect their pursuit of class-wide declaratory and

11   injunctive relief as this relief resolved claims raised in the related but separate individual cases,

12   *Contra Costa County v. Barbara C.*, Civil Case No. C14-00268 MEJ, *Contra Costa County v.*

13   *CiCi C.*, Civil Case No. C14-00269 MEJ, and *Contra Costa County v. Gail F.*, Civil Case No.

14   C14-00270 MEJ. County Agreement, p. 11 § VII, and the class settlement agreements at issue

15   here specifically carve out and reserve the class members' claims for compensatory education.

16        The class is represented by DRA and Public Counsel.  DRA and Public Counsel meet the

17   requirements of Rule 23(g), and should therefore be appointed class counsel.  Smith Decl. ¶ 5;

18   Declaration of Laura Faer in Support of Plaintiffs' Unopposed Motion for Preliminary Approval

19   ("Faer Decl.") ¶ 2.  They have substantial experience handling class actions and other complex

20   _____

[9] Each named Plaintiff was detained at the Juvenile Hall at the time that this suit was filed and at
21   the time that the initial Class Certification motion was filed on August 8, 2013.  Dkt. Nos. 1, 8,
     18-20.  Plaintiffs Q.G. and G.F. were detained at the Juvenile Hall at the time of the re-filing of
22   the class certification motion on January 9, 2014.  Dkt. Nos. 92, 97-98.  Although none of the
     named Plaintiffs currently are detained at the Juvenile Hall, their standing relates back to the
23   filing of the original complaint, when they were still detained there, and their claims on behalf of
     the class of youth still at the facility are not moot.  *U.S. Parole Comm'n v. Geraghty*, 445 U.S.
24   388, 398-99 (1980) (applying "inherently transitory" exception to mootness doctrine to relate
     back to standing at filing of complaint); *Hernandez v. Cnty. of Monterey*, Case No. 5:13-cv-
25   2354-PSG, 2014 U.S. Dist. LEXIS 138247, at *14 (N.D. Cal. 2014) (noting that "[i]f the
     inherently transitory exception applies, the mootness determination merges with the standing
26   analysis as of the filing of the complaint") (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S.
     Ct. 1523, 1530 (2013)).  In addition, Plaintiff G.F. is still under eighteen years old, and may be
27   returned to the Juvenile Hall in the future.  *Geraghty*, 445 U.S. at 398 (in the context of a class
     action complaint, stating that the "capable of repetition, yet evading review" doctrine can be
28   applied to avoid mootness if a named plaintiff "does have a personal stake at the outset of the
     lawsuit," and "the claim may arise again with respect to that plaintiff").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

litigation and have done extensive work investigating the claims in this action.  Smith Decl. ¶¶ 5-10, 32; Faer Decl. ¶¶ 2-8, 10.  DRA and Public Counsel are well versed in disability and education law, and have more than sufficient resources to vigorously prosecute this case, as demonstrated in their representation of the putative class thus far.  Smith Decl. ¶¶ 5-10, 25; Faer Decl. ¶¶ 2-8.

### C.   The Proposed Class Meets the Requirements of Rule 23(b)(2)

In addition to the four requirements of Rule 23(a), Plaintiffs must also satisfy the requirements contained in at least one of the subdivisions of Rule 23(b).  Plaintiffs move for class certification under Rule 23(b)(2), which is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  "Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  "Rule 23(b)(2) is almost automatically satisfied in actions primarily seeking injunctive relief." *Hernandez*, 2015 U.S. Dist. LEXIS 11396, at *41 (quoting *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011)) (internal quotation marks omitted).

In this case, the Plaintiff Class seeks declaratory and injunctive relief, and allege that Defendants' systemic policies and practices violate their civil rights by depriving them of access to education, including special education and related services, and subjecting them to room confinement without regard to their disabilities and without appropriate educational services. Injunctive suits brought to vindicate civil rights such as this one are exactly the type of suits for which Rule 23(b)(2) was designed.  *See Dukes*, 131 S. Ct. at 2557 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture.") (internal quotation marks and citation omitted); *see also Parsons*, 754 F.3d at 686; *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).  Because the challenged conduct is applicable to the proposed class, making declaratory and injunctive relief appropriate as to the class as a whole, Rule 23(b)(2) is satisfied.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**D.**     **Preliminary Approval of the Proposed Settlement Agreements is Proper**

Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court approval.  *Hanlon*, 150 F.3d at 1025.  Class-action settlements are generally subject to a two-step approval process: "first the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement."  *Horton v. Merrill Lynch*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).  If a proposed settlement receives preliminary approval, the parties provide notice to the class in a manner determined by the court.  In a Rule 23(b)(2) class action, "[a] district court has broad discretion in determining the kind of notice to employ in alerting class members to a proposed settlement and settlement hearing, subject to the 'broad reasonableness standards imposed by due process.'"  *Battle v. Liberty Nat. Life Ins. Co.*, 770 F. Supp. 1499, 1521 (N.D. Ala. 1991); *see also Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1350-51 (9th Cir. 1980).  Here, the proposed settlement is well within the range of possible approval as it is manifestly reasonable, providing the very relief sought in the Complaint, and should be approved by the Court.

Courts consider several factors when determining whether the settlement is "fundamentally fair, adequate, and reasonable," including (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.[10]  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (endorsing factors set forth in *Hanlon*, 150 F.3d at 1026).  The district court must explore these factors to survive appellate review but "the decision to approve or reject a

---

[10] This final factor is largely inapplicable at this preliminary approval stage.  Although the named Plaintiffs have each reviewed the Agreements and agreed to their terms, the absent class members have not yet received notice of the proposed Agreements or their contents. *See, e.g., Morget v. Applus Techs., Inc.*, Case No. 1:13-cv-01801-JLT, 2015 U.S. Dist. LEXIS 27185, at *22 (E.D. Cal. 2015) (noting that this factor would need to "be revisited prior to final approval" after notice of the settlement terms was provided to the class members).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

2    Furthermore, courts must give "proper deference to the private consensual decision of the

3    parties." *Id*. at 1027.  A court may probe the parties' consensual agreement only "to the extent

4    necessary to reach a reasoned judgment that the agreement is not the product of fraud or

5    overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

6    whole, is fair, reasonable and adequate to all concerned." *Id*. (internal quotation marks and

7    citation omitted).

8            1.    <u>The Settlement Provides Substantial Benefits to the Class While Avoiding
9                  Unnecessary Litigation and Delay.</u>

10          The Agreements satisfy the first four *Hanlon* factors because they provide the

11   comprehensive relief sought in the Complaint while taking into account the substantial risks,

12   costs and delay associated with further litigation.  Each side contends that it would have

13   ultimately prevailed after continued and likely prolonged litigation.  Plaintiffs maintain the Court

14   would have certified and maintained class certification, while Defendants submit that their

15   motions to dismiss would have been successful.  However, both parties agree that the risks

16   presented by continued litigation would have been great and that the Agreements will provide

17   substantial benefits to the proposed class while avoiding the risks and delay that a trial would

18   entail.  Smith Decl. ¶ 25.

19          The amount of relief gained through settlement will substantially improve the treatment

20   of youth with disabilities at the Juvenile Hall by: (a) eliminating the use of room confinement for

21   purposes of discipline, punishment, administrative convenience, retaliation, and staffing

22   shortages; (b) ensuring that youth with disabilities are provided with educational services,

23   including special education; (c) providing for the provision of specialized individual

24   programming to youth with severe needs; (d) improving coordination and opening

25   communication between the County and CCCOE through the use of multi-disciplinary team

26   meetings and other efforts; (e) ensuring that Probation staff attend IEP meetings  where their

27   presence is requested and needed to address ongoing behavioral issues and placement options;

28   and (f) allowing for an expert review of County and CCCOE's disability-related policies and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   practices including development of recommendations for implementation. *Id.* ¶¶ 26-28. The

2   breadth of the relief obtained through these Agreements is unprecedented and will serve as a

3   model for other jurisdictions throughout the State and the Nation. *Id.* ¶ 25.

4        Both parties have weighed the benefits of these Agreements against the risks of

5   proceeding to trial, the costs of continued litigation, and the delay in achieving improvements to

6   the Juvenile Hall.  If the case proceeded to trial, both parties would have run the risk of having

7   little input into the determination of liability and, if needed, the remedy ordered.  Through

8   settlement, however, both parties were able to participate in fashioning the relief.  In so doing,

9   the parties also avoided the costs of continued litigation in the hard-fought law and motion

10   practice between the parties.  Finally, the class of affected individuals need not wait further for

11   relief.  Relief will be almost immediate once the experts are hired and begin conducting their

12   evaluations.  In a short period of time changes will be implemented in Juvenile Hall which would

13   otherwise not have occurred if litigation were to have continued.

14           2.      The Agreements Should be Approved Given the Discovery Completed

15                 and Quality of the Negotiations.

16        The action was vigorously litigated and involved significant discovery, including

17   depositions of each of the named Plaintiffs and voluminous written discovery including the

18   production of extensive educational records for individual youth held at the Juvenile Hall.  This

19   matter also involved two separate sets of motions to dismiss, which were briefed concurrently

20   with Plaintiffs' motion for class certification.  Further, this action also involved the filing of

21   administrative proceedings on behalf of each named Plaintiffs, all of which proceeded to hearing

22   against the County.  Thus, when Plaintiffs and Defendants agreed to explore settlement, both

23   sides came to the negotiating table with extensive knowledge of the relevant facts, evidence, and

24   law.

25        The settlement process was extensive, involved, and conducted at arm's length.  The

26   negotiations were informed and directed, and included multiple teleconferences and numerous

27   in-person meetings, as well as six settlement conferences before Magistrate Judge Spero.  Many

28   issues were heavily contested and the resulting compromises were based on a series of protracted

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

negotiations involving careful deliberation by counsel for the Parties. In particular, the Parties negotiated extensively over the content and form of the Agreements. The lack of collusion between the Parties is further evidenced by the fact that the Parties did not negotiate Plaintiffs' attorney's fees or costs until after agreement was reached on the key merits issues.

3.  The Settlements were Crafted by Experienced Counsel for Both Plaintiffs and Defendants

The Agreements were negotiated by experienced and reputable counsel for the Parties. Plaintiffs' counsel are well-qualified litigators with specialized expertise in the area of major class actions to improve physical and programmatic access to governmental programs and activities and to improve educational services, particularly special education for students with disabilities. Faer Decl. ¶¶ 2-8; Smith Decl. ¶¶ 5-10. Defendants are government agencies, which is a factor that favors approval of the settlement, because governmental participants also have an independent obligation to consider the public interest in agreeing to a settlement.[11] *See, e.g.*, *Hanlon*, 150 F.3d at 1026; *Touhey v. United States*, Case No. 08-01418-VAP, 2011 U.S. Dist. LEXIS 81308, at *20-21 (C.D. Cal. 2011); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1031-32 (N.D. Cal. 1999). Counsel for both parties view this Agreement as a successful compromise and have created a detailed and reasonable plan moving forward.

Thus, when considered together, these factors support preliminary approval of the proposed class action settlement under Rule 23(e). Because the settlement is "fundamentally fair, adequate, and reasonable," the Court should preliminary approve the Agreement through entry of the proposed Order.

**E.  The Court Should Direct Distribution of the Notice of Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure states that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court

---

[11] The United States Department of Justice and United States Department of Education were also involved in this case and submitted a Statement of Interest (Dkt. No. 159) in support of Plaintiffs' Opposition to Defendants' Motions to Dismiss. The United States Department of Justice and United States Department of Education have been provided with executed copies of the Agreements.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    directs."  Actions certified under Rule 23(b)(2) have no strict notice requirements of any kind,

2    thus leaving the form and method of any notice to the court's discretion.  *See* Rule 23(c)(2).  In a

3    class settlement, notice also must be given of the proposed terms for payment of fees and costs

4    "in a reasonable manner."  Rule 23(h)(1).  Both the form of the notice and the method of

5    distribution have been agreed to by Plaintiffs and Defendants. Smith Decl., Ex. C.

6         The substance of the notice is designed to inform the class members of the primary

7    features of both of the proposed settlements, the effect of the settlements in releasing class

8    equitable relief claims, the terms of the resolution of the fees and costs claim, the procedures and

9    deadline for submitting an objection and appearing at the Fairness Hearing, and ways to obtain

10   more information and a complete copy of the settlement agreement.  *Id.*

11        The proposed distribution method for the notice is targeted to reach the maximum

12   number of class members in the most efficient way, within reasonable costs.  *Id.* ¶ 30.  Under the

13   proposed plan, CCCOE will distribute the notice to the education rights holder of all youth

14   currently enrolled at Mt. McKinley who have an IEP or Section 504 plan by mail or, if the youth

15   is 18 years old or above and holds his or her own education rights, directly.  CCCOE Agreement,

16   p. 9, § 8.4.1.2.  The County will post the notice in the visitor areas of the Juvenile Hall, in a

17   prominent place on each unit, and in the entrance lobby until the deadline for submitting

18   objections has passed.  County Agreement, p. 9, § V(F)(c).  CCCOE will post the notice in each

19   classroom at the Juvenile Hall until the objections deadline has passed.  CCCOE Agreement, p.

20   9, § 8.4.1.4.  The County also will mail the notice to the Contra Costa County Juvenile Court

21   Judges, the Contra Costa County Public Defender's Office, and the Contra Costa County District

22   Attorney's Office.  County Agreement, p. 9, § V(F)(c).  Plaintiffs' Counsel, the County, and

23   CCCOE will post the notice and the proposed agreements to which they are a party on their

24   respective websites, and each will post the final such agreements on their websites following

25   final approval by the Court.  *Id.*, p. 9, § V(F)(b); CCCOE Agreement, p. 9, § 8.4.1.3.  Given the

26   Court's broad discretion under Rule 23(b)(2), this proposed notice distribution plan is more than

27   adequate.

28

1    **F.**      **The Court Should Approve the Proposed Scheduling Order**

2         The parties are submitting with this motion a proposed order setting forth proposed dates

3    for issuance of the notices, deadlines for objection, and a date for the Fairness Hearing to

4    determine final approval of the agreement, and related orders and deadlines. The parties request

5    that the Court enter this proposed order with such changes as the Court deems appropriate.

6    **VI.**     **CONCLUSION**

7         The proposed settlements not only eliminate the use of room confinement for purposes of

8    discipline, punishment, administrative convenience, retaliation, and staffing shortages, they also

9    ensure youth with disabilities are provided with the special educational services they need. For

10   these and the reasons discussed above, the proposed settlement agreements are a fair, reasonable,

11   and adequate resolution to the claims at issue. Therefore, the parties request that the Court

12   conditionally certify the proposed settlement class, grant preliminary approval to the proposed

13   agreements, approve the proposed notice and notice distribution plan, and issue the proposed

14   scheduling order, including setting a date for the Fairness Hearing.

15   DATED: June 30, 2015            Respectfully submitted,

16

17                               DISABILITY RIGHTS ADVOCATES
                                 PUBLIC COUNSEL

18                               ZELLE HOFMANN MASON & VOELBEL

19

20   _____

21                               Mary-Lee Smith
                                 Attorney for Plaintiffs

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644