1

SIDNEY M. WOLINSKY (CA BAR NO. 33716) (swolinsky@dralegal.org)
MARY-LEE K. SMITH (CA BAR NO. 239086)  (msmith@dralegal.org)
DISABILITY RIGHTS ADVOCATES

2

2001 Center Street, Fourth Floor
Berkeley, CA  94704-1204

3

Telephone:     (510) 665-8644
Facsimile:      (510) 665-8511

4

5

LILLIAN CHEN (CA BAR NO. 280395) (lchen@publiccounsel.org)
PUBLIC COUNSEL

6

2001 Center Street, Fourth Floor
Berkeley, CA  94704-1204

7

Telephone:     (510) 529-3419
Facsimile:      (510) 529-3491

8

9

DANIEL S. MASON (CA BAR NO. 54065) (dmason@zelle.com)
HEATHER T. RANKIE (CA BAR NO. 268002) (hrankie@zelle.com)
ZELLE HOFMANN VOELBEL & MASON LLP

10

44 Montgomery Street, Suite 3400
San Francisco, CA 94104

11

Telephone: (415) 693-0700
Facsimile: (415) 693-0770

12

13

*Attorneys for Plaintiffs*

14

15

**UNITED STATES DISTRICT COURT**

16

**NORTHERN DISTRICT OF CALIFORNIA**

17

G.F., by and through her guardian ad litem,
Gail F.; W.B.; and Q.G.; on behalf of

18

themselves and a class of those similarly
situated,

19

                    Plaintiffs,

20

v.

21

CONTRA COSTA COUNTY; CONTRA
COSTA COUNTY OFFICE OF

22

EDUCATION,

23

                    Defendants.

24

25

26

27

28

**Case No.  C-13-03667 MEJ**

**CLASS ACTION**

**PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF
SETTLEMENT AGREEMENTS**

Date:   November 12, 2015
Time:   10:00 AM
Place:  Courtroom B1, 15th Floor
Judge: Magistrate Judge James
Trial Date:  None Set

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## TABLE OF CONTENTS

I.     Introduction ................................................................................................. 1

II.    Statement of Facts ........................................................................................ 2

       A.    Factual and Procedural History .......................................................... 2

       B.    The Agreements ................................................................................. 3

             1.    The County Agreement ............................................................. 4

             2.    CCCOE Agreement ................................................................. 5

       C.    Notice Has Been Provided to the Class. ............................................. 7

       D.    No Class Members Objected to the Agreements. ................................ 8

III.   Argument ...................................................................................................... 8

       A.    Legal Standard for Settlement of a Class Action ............................... 8

       B.    Final Approval of the Proposed Agreements is Proper. ...................... 9

             1.    The Benefits to the Class Are Significant in Light of the
                   Strength of the Plaintiffs' Case and the Risk, Expense,
                   Complexity, and Likely Duration of Future Litigation. ............ 9

             2.    The Agreements are Fair, Adequate, and Reasonable in
                   Light of the Extensive Discovery Completed and the Stage
                   of the Proceedings. ................................................................. 11

             3.    Experienced Class Counsel and Governmental Entities
                   Endorse the Agreements. ........................................................ 12

             4.    Class Members Have Filed No Objections to the
                   Agreements. ........................................................................... 13

             5.    The Agreements Are the Product of Good Faith, Arms-
                   Length Negotiations. .............................................................. 13

IV.    CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)................................................................................. 13, 14

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................................ 11

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014)..................................................................................... 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998). .............................................................................. 8, 9, 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011). ...................................................................................... 9, 14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008). ................................................................ 9, 12, 13

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................................. 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ........................................................................................ 8, 9

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 8

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
  59 F. Supp. 2d 1021 (N.D. Cal. 1999) ............................................................................. 13

*Satchell v. Fed. Express Corp.*,
  No. C03-2659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................... 14

**Statutes**

20 U.S.C. § 1400................................................................................................................... 2

28 U.S.C. § 1715(b) .............................................................................................................. 8

29 U.S.C. § 794 ..................................................................................................................... 2

42 U.S.C. § 12101 ................................................................................................................. 2

Cal. Educ. Code § 5600 ........................................................................................................ 2

Cal. Gov't Code § 11135 ...................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 8, 9, 14

*G.F., et al. v. Contra Costa County, et al.*, Case No.  C-13-03667 MEJ
**Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreements**                    i

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE THAT on November 12, 2015 or as soon thereafter as the

3  matter may be heard, Plaintiffs G.F., by and through her guardian ad litem Gail F., W.B, and

4  Q.G., on behalf of themselves and a class of those similarly situated, move the Court for final

5  approval of the proposed class settlement agreements ("the Agreements") submitted herewith

6  and incorporated herein by reference in the above-captioned matter.  Defendants Contra Costa

7  County and Contra Costa County Office of Education do not oppose this motion.

8      Plaintiffs respectfully request that the Court enter the attached proposed order (1) finding

9  the proposed Agreements' terms and conditions are fair, adequate, and reasonable; (2) approving

10  the Agreements; and (3) dismissing the litigation on the merits and with prejudice against the

11  named Plaintiffs and the settlement class, subject to the Court retaining jurisdiction to administer

12  and enforce the Agreements.

13          ## MEMORANDUM OF POINTS AND AUTHORITIES

14  **I.      INTRODUCTION**

15      The proposed class settlement agreements ("the Agreements") in this case will

16  dramatically improve conditions of confinement and educational opportunities for youth with

17  disabilities who are detained in the John A. Davis Juvenile Hall ("Juvenile Hall").  The

18  Agreements address and remedy alleged discrimination against youth with disabilities by the

19  Contra Costa County Department of Probation ("Probation") and the Contra Costa County Office

20  of Education ("CCCOE").

21      This lawsuit was filed in August of 2013 on behalf of three young people with

22  disabilities, G.F., W.B., and Q.G. (collectively, "Individual Plaintiffs"), who were detained at

23  Juvenile Hall, which is operated by the Defendant Contra Costa County ("the County") through

24  Probation, and who attended Mt. McKinley School, which is operated by CCCOE.  Dkt. No. 1.

25  Plaintiffs have reached settlements with Defendants the County and CCCOE (attached as

26  Exhibits A and B, respectively, to the Declaration of Mary-Lee Smith in support of Plaintiffs'

27  Unopposed Motion for Final Approval of Settlement Agreements ("Smith Decl.")).

28      These Agreements will bring important and lasting benefits to the young people detained

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    in Juvenile Hall.  Though Defendants deny all liability, they have agreed to make significant

2    policy changes to ensure that they are addressing the needs of young people with disabilities.

3    The Agreement with the County prohibits the use of room confinement for all youth, not just

4    those with disabilities.  Room confinement for up to no more than four hours may be used as a

5    temporary response to behavior that threatens immediate harm to the youth or others.  Under the

6    Agreement with CCCOE, youth with disabilities will receive the special education services to

7    which they are entitled at Mt. McKinley School within Juvenile Hall, and Probation and CCCOE

8    will implement improved policies and coordination between them to ensure provision of special

9    education services.  The Agreements in this case, and the policy changes put into place following

10   completion of the Agreements, will serve as models for other juvenile detention facilities

11   throughout the state and nationwide.

12          On July 30, 2015, this Court preliminarily approved the proposed Agreements and the

13   proposed notice to the class.  Dkt. No. 288.  In accordance with the Court's preliminary approval

14   order, notice has been provided to the class and no objections have been made.  In light of these

15   facts and as discussed below, the Agreements are fair, reasonable, and adequate, and merit final

16   approval.

17   **II.     STATEMENT OF FACTS**

18          **A.     Factual and Procedural History**

19          Plaintiffs brought this lawsuit against Defendant County and Defendant CCCOE

20   (collectively, "Defendants") alleging violations of the Americans with Disabilities Act, 42

21   U.S.C. § 12101 *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section

22   504"), the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), and

23   the California Education and Government Codes, Cal. Educ. Code § 5600 *et seq.* and Cal. Gov't

24   Code § 11135 *et seq.*

25          Plaintiffs allege that Defendants violated the ADA, Section 504, the IDEA, and

26   California law by placing youth with disabilities in room confinement[1] without regard to their

---

[1] Plaintiffs referred in their pleadings and briefings to "solitary confinement."  As a part of the settlement process, Plaintiffs now refer to such conditions as "room confinement."

disabilities, by denying educational services and special education services to youth who were in room confinement, and by providing inadequate special education services to youth in the classroom.  Defendants denied and continue to deny all allegations and associated liability.

Plaintiffs filed their original complaint and motion for class certification on August 8, 2013.  Dkt. Nos. 1, 8.  Plaintiffs filed their First Amended Complaint on December 24, 2013 (Dkt. No. 87) and re-filed their motion for class certification, pursuant to court order, on January 9, 2014.  Dkt. Nos. 82, 92.  Defendants filed motions to dismiss Plaintiffs' claims on January 24, 2014 and oppositions to Plaintiffs' motion for class certification on February 7, 2014.  Dkt. Nos. 113, 118, 133, 136.  The motions were fully briefed but terminated for statistical purposes, as they were pending for over a year while the parties negotiated settlement.  Dkt. No. 273.[2]

The parties undertook extensive fact investigation and discovery in this case. Plaintiffs' attorneys made numerous visits to Juvenile Hall and reviewed thousands of pages of documents obtained through Public Records Act requests and education records requests.  Smith Decl. ¶ 6. Defendants produced education records for youth held at Juvenile Hall, and deposed each of the Individual Plaintiffs.  *Id.*

The parties engaged in extensive arms-length settlement discussions to reach agreement on settlement.  As detailed in Plaintiffs' motion for preliminary approval, the parties attempted settlement since the filing of the complaint in August of 2013.  Dkt. No. 279 at 5-6.  It was not until August of 2014, with the assistance of Magistrate Judge Spero, that the parties began making progress in settling this case, which culminated in the Agreements before this Court. Smith Decl. ¶ 7.

**B.   The Agreements**

Instead of continued litigation, the parties have agreed that the County will eliminate use of room confinement for purposes of discipline, punishment, administrative convenience, retaliation, and staffing shortages, allowing it only for up to four hours as a temporary response

---

[2] The County also filed appeals in this Court (which were related to the instant proceeding), challenging the decisions of the Office of Administrative Hearings stemming from the individual named plaintiffs' administrative due process hearings.  Dkt. Nos. 120-3, 120-4, 120-5, 131, 155.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   to behavior that is an immediate threat to the safety of the youth or others.  County Agreement

2   (Smith Decl. Ex. A) § IV(D).  In addition, the County will adopt policies and practices to

3   implement, among other things, the Juvenile Detention Alternatives Initiative standard that

4   requires that disability be considered in determining an appropriate response and assigning

5   consequences.  *Id.* § IV(A)(1)(e).  The parties further agreed that CCCOE will make

6   improvements to special education services, specialized programming, and communication

7   between stakeholders based on the assessment and recommendations of a third party expert.

8   CCCOE Agreement (Smith Decl. Ex. B) §§ 4.1.7, 4.1.10-12.  Class Counsel is aware of no other

9   class action addressing disciplinary and educational policies in juvenile halls for youth with

10  disabilities that has resulted in such comprehensive reforms, particularly the adoption of national

11  best practices found in the Juvenile Detention Alternatives Initiative standards.  Smith Decl. ¶

12  10.

13              1.    The County Agreement

14          The primary provisions of the Agreement between Plaintiffs and the County pertain to

15  the use of room confinement, expert review of disability-related policies, the use of multi-

16  disciplinary teams, Probation attendance at Individualized Education Program ("IEP") meetings,

17  and monitoring and reporting of implementation.  The Agreement fully resolves all injunctive

18  relief claims for the class, and carves out absent class members' individual claims for

19  compensatory education or due process.  County Agreement § VI.

20          The Agreement requires the County to limit use of room confinement for youth in

21  Juvenile Hall.  The County agrees that Probation staff will not use room confinement for any

22  purposes other than as a temporary response to behavior that threatens immediate harm to youth

23  or others.  *Id.* § IV(D)(2).  Continuous room confinement will be no longer than four hours.  *Id.*

24  § IV(D)(3).

25          Pursuant to the Agreement, the County will retain two experts to conduct a review of the

26  County's policies and practices regarding room confinement, behavior incentives,

27  interdepartmental coordination, identification, assessment, and tracking of youth with

28  disabilities, and implementation of the Juvenile Detention Alternatives Initiative standard

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

V.D.4.[3]  *Id.* § IV(A).  The County will implement the joint recommendations.  *Id.*

Additionally, multi-disciplinary team meetings that include representatives from Probation, CCCOE, and County Mental Health should be held at least once per month to coordinate responses and interventions for youth having behavior issues, to coordinate the provision of special education and counseling services, and to discuss a continuum of placements based on the needs of the youth in the Hall.  *Id.* § IV(C).  The County agrees that a Probation staff member will attend IEP meetings when requested, or when the Department has permission and certain circumstances have occurred, including when a youth was removed for more than 9 school days in a school year, a youth was detained for 30 consecutive days or more and a special day class or residential treatment is requested or recommended, or where a behavior support plan is being put into place.  *Id.*

There will be an implementation period of 18 months and a monitoring period of 24 months, with set benchmarks for complying with the Agreement's provisions.  *Id.* § IV(E).  The experts will provide reports every six months during the monitoring period.  *Id.*  The Court will retain jurisdiction over the matter for approval and enforcement of an award of attorneys' fees and costs, and for dispute resolution.  *Id.* § VIII.

The County agrees to pay Plaintiffs' counsel $1,340,000 as settlement of all attorneys' fees and costs for the class action and the named Plaintiffs' individual due process claims.  *Id.* § IX.  The parties did not negotiate Plaintiffs' attorneys' fees or costs until after reaching agreement on the key merits issues.  Smith Decl. ¶ 7.

            2.    CCCOE Agreement

The primary provisions of the Agreement between Plaintiffs and the County pertain to expert review of special education policies, designation of an ADA coordinator, coordination with Probation, and monitoring and reporting of implementation.  The Agreement fully resolves

---

[3] Juvenile Detention Alternatives Initiative standard V.D.4. states: "[s]taff consider whether a youth's disability, mental illness, special education status or limited English proficient status contributed to his or her behavior when assigning consequences for violations of the facility's rules.  Staff consult with appropriate professionals, such as qualified mental health professionals, when making that decision."

1    all injunctive relief claims for the class, and carves out absent class members' individual claims

2    for compensatory education or due process.  CCCOE Agreement (Smith Decl. Ex. B) § 11.2.

3            Pursuant to the Agreement, CCCOE will retain an expert to review CCCOE's policies,

4    procedures, and practices.  The expert will have expertise in the IDEA, Section 504, the ADA,

5    California state law requirements regarding special education, and the operation of juvenile court

6    schools.  *Id.* § 4.1.1.  The expert will review and report on CCCOE's policies, procedures, and

7    practices regarding Child Find obligations, developing and implementing IEPs and Section 504

8    plans for all eligible disabled youth at Juvenile Hall, discipline for eligible disabled youth at

9    Juvenile Hall, and the obligations of CCCOE to coordinate with Probation.  *Id.* § 4.1.7.

10           CCCOE will adopt and implement proposed revisions to policies, procedures, and

11   practices provided by the expert.  *Id.* §§ 4.1.10-12.  Prior to implementation, either party may

12   challenge the expert's recommendations on the basis that the recommendation is not required by

13   and/or does not comply with federal and/or state law.  *Id.* § 4.1.11.

14           CCCOE also will create an ADA compliance position, so that at least one employee will

15   be responsible for ensuring compliance with the ADA.  *Id.* § 4.2.1.  CCCOE will use best efforts

16   to coordinate with Probation and other relevant entities when implementing the expert's

17   proposed revisions to policies, procedures, and practices.  *Id.* § 4.3.1.

18           There will be a monitoring period of 24 months, commencing after the expert has drafted

19   the expert report and the report has been formally approved.  *Id.* § 4.1.12.  The expert will

20   provide the parties with monitoring reports on a quarterly basis for the first 12 months and then a

21   semi-annual basis with a final report at the end of the 24-month period.  *Id.* § 5.1.  The Court will

22   retain jurisdiction over the matter for approval and enforcement of an award of attorneys' fees

23   and costs, and for dispute resolution.  *Id.* § 10.1.

24           CCCOE agrees to pay Plaintiffs' counsel $1,165,000 as settlement of all attorneys' fees

25   and costs for the class action, of which $70,000 will be set aside for fees, expenses, and costs

26   related to monitoring.  *Id.* §§ 12.2-3.  The parties did not negotiate Plaintiffs' attorneys' fees or

27   costs until after reaching agreement on the merits.  Smith Decl. ¶ 7.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    **C.    Notice Has Been Provided to the Class.**

2         The parties have provided notice to the class, by substantially complying with the notice

3    requirements specified in the Agreements and incorporated into this Court's order granting

4    preliminary approval.  Dkt. 288; County Agreement § V.F., CCCOE Agreement § 8.4.

5         The County provided notice through physical and digital postings and mail. The County

6    posted the approved Notice in visitor areas, each unit, and the entrance lobby of Juvenile Hall,

7    commencing on or about August 6, 2015.  Declaration of D. Cameron Baker Regarding

8    Distribution of Notice of Settlement ("County Decl."), Dkt. No. 301, ¶ 4(b).  The County e-

9    mailed the approved Notice to the Contra Costa County Juvenile Court Judges, the Contra Costa

10   County Public Defender's Office, and the Contra Costa County District Attorney's Office.  *Id.*

11   ¶ 4(a).  Plaintiffs and the County Department of Probation posted the Notice and proposed

12   Agreement in prominent places on their respective websites on or before August 20, 2015.[4]

13   Smith Decl. ¶ 11; County Decl. ¶ 4(c).

14        CCCOE provided Notice through physical and digital postings and mail.  CCCOE

15   distributed the approved Notice to education rights holders of all youth currently enrolled at Mt.

16   McKinley with an IEP and/or a Section 504 plan, by personal delivery or by First Class U.S.

17   Mail to the last known address.  Declaration of Kimberly Smith Confirming Distribution of

18   Notice to Plaintiff Settlement Class Members ("CCCOE Decl."), Dkt. No. 300, ¶ 5(a),(b).

19   CCCOE sent out a total of 65 notices and only two were returned as undeliverable.

20   Supplemental Declaration of Kimberly A. Smith Regarding Distribution of Notice to Plaintiff

21   Settlement Class Members ("CCCOE Supp. Decl."), Dkt. No. 302, ¶ 4.  CCCOE posted the

22   approved Notice in each classroom of Juvenile Hall, and requested that the County post the

23   approved Notice in the lobby of Juvenile Hall.  CCCOE Decl. ¶ 5(c).  Plaintiffs and CCCOE

24   posted the Notice and proposed Agreement in a prominent place on their respective websites, on

25   _____

26   [4] The County Department of Probation posted the Notice on its website but did not directly provide the Agreement.  Instead, the County directed viewers to follow a link to the DRA website to find the proposed Agreement.  County Decl. ¶ 4(c).  The County discovered this

27   deficiency on October 2, 2015, and remedied it by posting the Agreement directly to its website immediately thereafter.  *Id.*

28

1  or before August 20, 2015.[5]  Smith Decl. ¶ 12; CCCOE Decl. ¶ 6.

2      Defendants provided Notice of the proposed Agreements to the U.S. Department of

3  Justice, the U.S. Department of Education, the Office of Juvenile Justice and Delinquency, the

4  Attorney General for the State of California, the California Department of Education, and the

5  California Board of State and Community Corrections, as required by the Class Action Fairness

6  Act (28 U.S.C. § 1715(b)), by registered mail sent on July 10, 2015.  County Decl. ¶ 4(d), Ex. B.

7  None of these class notices were returned as undeliverable.  County Decl. ¶ 4(d).

8      **D.**    **No Class Members Objected to the Agreements.**

9      Notice was effected as detailed above.  No class members submitted objections to either

10  the County or CCCOE Agreements.  Smith Decl. ¶ 13.  There were no other responses received

11  by Plaintiffs' counsel from class members.  *Id.*

12  **III.**    **ARGUMENT**

13      **A.**    **Legal Standard for Settlement of a Class Action**

14      Pursuant to Federal Rule of Civil Procedure 23(e), court approval is required to settle the

15  claims of a certified class.  Approval is a two-step process.  *Nat'l Rural Telecomm. Coop. v.*

16  *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  "[T]he Court first determines whether a

17  proposed class action settlement deserves preliminary approval and then, after notice is given to

18  class members, whether final approval is warranted."  *Id.*  If the proposed settlement would bind

19  class members, "the court may approve it only after a hearing and on finding that it is fair,

20  reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  A higher standard of fairness applies when

21  settlement approval takes place prior to formal class certification.  *Hanlon v. Chrysler Corp.*, 150

22  F.3d 1011, 1026 (9th Cir. 1998).

23      Notwithstanding the strict procedural requirements of Rule 23, "a district court's only

24  role in reviewing the substance" of a settlement agreement is to determine that it is "fair,

25  adequate, and free from collusion."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

26  
27  
28  

[5] CCCOE initially posted only the proposed Agreement, not the Notice, on or before August 20, 2015.  On October 1, 2015, one day after CCCOE realized its error, CCCOE corrected the issue, and updated the website to include both the Notice and the Agreement.  CCCOE Decl. ¶ 6.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    The court "must evaluate the fairness of a settlement as a whole, rather than assessing its

2    individual components," *Id.* at 818-19, and give "proper deference to the private consensual

3    decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court must also be mindful of the

4    Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re*

5    *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).

6           In the Ninth Circuit, courts consider the following factors when evaluating a proposed

7    class action settlement:

8                     the strength of the plaintiffs' case; the risk, expense, complexity, and
                      likely duration of further litigation; the risk of maintaining class
9                     action status throughout the trial; the amount offered in settlement;
                      the extent of discovery completed and the stage of the proceedings;
10                    the experience and views of counsel; the presence of a governmental
                      participant; and the reaction of the class members to the proposed
11                    settlement.

12   *Lane*, 696 F.3d at 819 (citing *Hanlon*, 150 F.3d at 1026). When parties negotiate a settlement

13   agreement prior to formal class certification, courts must also determine whether the settlement

14   resulted from collusion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th

15   Cir. 2011).

16        **B.        Final Approval of the Proposed Agreements is Proper.**

17          Plaintiffs assert, and Defendants do not contest, that each of the *Hanlon* factors supports

18   final approval of the proposed Agreements pursuant to Rule 23(e).

19               1.      The Benefits to the Class Are Significant in Light of the Strength of the
                         Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration
20                       of Future Litigation.

21          The proposed Agreements satisfy the first four *Hanlon* factors because they provide

22   comprehensive relief to the class members, taking into account the strength of the Plaintiffs' case

23   and the substantial risk, cost, and delay associated with further litigation.

24          Plaintiffs maintain that they would have prevailed at summary judgment or at trial and, in

25   particular, that the Court would have certified a class and maintained class certification through

26   trial. Smith Decl. ¶ 8. Nevertheless, they acknowledge the novel nature of their class claims,

27   and that continued litigation would involve great risk, including the risk that the Court might:

28   (1) grant, in part or in full, Defendants' motions to dismiss the First Amended Complaint;

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  (2) deny, in part or in full, Plaintiffs' motion for class certification; or (3) after granting

2  Plaintiffs' motion, later decertify the class.  *Id.*  In addition, both parties agree that, absent

3  settlement, this case would involve prolonged and costly litigation, which might last years and

4  involve extensive and complex law and motion practice.  *Id.* ¶ 9.  These "[d]ifficulties and risks

5  in litigating weigh in favor of approving a class settlement."  *Dyer v. Wells Fargo Bank, N.A.*,

6  303 F.R.D. 326, 331 (N.D. Cal. 2014).

7       The proposed Agreements avoid the risk, delay, and cost of further litigation, and allow

8  all parties to participate in fashioning almost immediate relief for young people with disabilities

9  at Juvenile Hall.  The Agreements: (1) eliminate the use of room confinement for purposes of

10  discipline, punishment, administrative convenience, retaliation, and staffing shortages, and limit

11  its use to up to four hours as a temporary response to behavior which poses an immediate threat

12  to self or others; (2) ensure that youth with disabilities receive education services, including

13  legally required special education; (3) improve coordination and open communication between

14  the County and CCCOE through the use of multi-disciplinary team meetings and attendance by

15  Probation staff at IEP meetings; and (4) allow for expert review of the County and CCCOE's

16  disability-related policies and practices, and implementation of the experts' recommendations.

17  These changes will substantially improve the lives of thousands of young people with disabilities

18  and provide them with the additional resources they need to succeed when they leave Juvenile

19  Hall.

20       The breadth of the relief obtained through these Agreements is unprecedented.  Class

21  Counsel is aware of no other class action challenging disciplinary and educational policies and

22  practices in a juvenile hall on the basis of disability discrimination that that has resulted in such

23  comprehensive reforms, particularly, the adoption of national best practices found in the Juvenile

24  Detention Alternatives Initiative standards.  Smith Decl. ¶ 10.  The policies that will result from

25  the proposed Agreements will serve as a model for juvenile halls throughout the state and nation.

26  These substantial benefits to the class, particularly considered in conjunction with the risks and

27  difficulties associated with continued litigation, support approval of the proposed Agreements.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

2.   <u>The Agreements are Fair, Adequate, and Reasonable in Light of the
Extensive Discovery Completed and the Stage of the Proceedings.</u>

The extent of discovery completed and the stage of the proceedings also weigh in favor of final approval.  The parties entered into the proposed Agreements nearly two years after Plaintiffs filed their complaint.  Dkt. Nos. 1, 279-2, 279-3.  Before filing, Plaintiffs' counsel undertook an extensive investigation of policies and practices affecting youth at Juvenile Hall. This investigation included the review of thousands of pages of documents obtained through Public Records Act requests and education records requests, as well as numerous visits to Juvenile Hall to meet with detained youth.  Smith Decl. ¶ 6.

Since the action commenced, the parties have engaged in significant discovery.  In particular, Defendants have produced extensive education records concerning individual young people held at Juvenile Hall, as well as other pertinent documents, and have deposed each of the named Plaintiffs.  *Id.*  In addition, the parties have briefed two separate sets of motions to dismiss and a motion for class certification, and Plaintiffs have pursued administrative proceedings against the County and CCCOE on behalf of each of the named Plaintiffs in order to exhaust the administrative remedies under the IDEA.  *Id.*  The administrative actions against CCCOE were settled.  *Id.*  However, the actions against the County were subject to a jurisdictional hearing to determine whether the Office of Administrative Hearings had jurisdiction over the County Probation Department and once that jurisdiction was established, each administrative action proceeded to a hearing.  *Id.*

To reach the proposed Agreements, the parties participated in an extended arms-length settlement process, which involved multiple teleconferences and in-person meetings, the exchange of numerous written proposals, and six settlement conferences before Magistrate Judge Joseph C. Spero.  Declaration of Mary-Lee Smith in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlements ("Smith Preliminary Approval Decl."), Dkt. No. 279-1, ¶¶ 11-24.

The parties therefore reached the proposed Agreements with the benefit of extensive knowledge of the relevant facts, evidence, and law, and only after protracted and diligent negotiation.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)

1   (where the litigation has proceeded to a point at which both plaintiffs and defendants have "a

2   clear view of the strengths and weaknesses of their cases," this factor favors settlement).

3          3.   Experienced Class Counsel and Governmental Entities Endorse the
             Agreements.
4

5          The Ninth Circuit has recognized that "[p]arties represented by competent counsel are

6   better positioned than courts to produce a settlement that fairly reflects each party's expected

7   outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here,

8   Class Counsel and the County and CCCOE, both governmental entities, agree that the proposed

9   Agreements represent a fair, reasonable, and adequate resolution of the class claims.

10          Class Counsel are well-qualified litigators with specialized expertise in the fields of

11   disability and education rights.  Disability Rights Advocates has served as lead counsel in over

12   one hundred disability rights class action cases across the United States and has specialized

13   expertise in class action litigation to improve physical and programmatic access to governmental

14   programs and activities.  Smith Preliminary Approval Decl. (Dkt. No. 279-1) ¶ 6.  Public

15   Counsel's education rights team brings extensive experience in impact litigation to improve

16   access to education services, particularly special education services.  Declaration of Laura Faer

17   in Support of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Settlement

18   Agreements ("Faer Decl."), Dkt. No. 294, ¶¶ 5-9.  Class Counsel consider the proposed

19   Agreements to be fair and reasonable compromises of the disputed issues.  Smith Decl. ¶ 10.

20   The Agreements will fully resolve all injunctive relief claims for the class, and will serve as

21   models for other juvenile halls.  If the parties had proceeded with litigation, a resolution might

22   have taken years to achieve, and might not have been as favorable as the result obtained through

23   settlement.  Smith Decl. ¶ 9.  These "recommendations of plaintiffs' counsel should be given a

24   presumption of reasonableness."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1043.

25          Because Defendants are government entities with an independent obligation to consider

26   the public interest in agreeing to a settlement agreement, their endorsement also weighs in favor

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  of approval.  *See Hanlon*, 150 F.3d at 1026; *San Francisco NAACP v. San Francisco Unified*

2  *Sch. Dist.*, 59 F. Supp. 2d 1021, 1031-32 (N.D. Cal. 1999).[6]

3            4.     Class Members Have Filed No Objections to the Agreements.

4        In its July 30, 2015 Order Granting Preliminary Approval, the Court approved the

5  parties' proposed Notice of Proposed Settlement of Class Action Lawsuit ("Notice") and Notice

6  Plan, except that it ordered the parties to modify the Notice to reflect the amended dates in the

7  Order.  Dkt. No. 288 at 26-27.  As discussed in detail above, the parties have carried out the

8  proposed Notice Plan, and substantially complied with all notice requirements.  No class

9  members have filed objections to the proposed Agreements.

10        "Courts have repeatedly recognized that the absence of a large number of objections to a

11  proposed class action settlement raises a strong presumption that the terms of the proposed class

12  settlement [] are favorable to the class members."  *Bellinghausen v. Tractor Supply Co.*, 306

13  F.R.D. 245, 258 (N.D. Cal. 2015).  Where, as here, no class members object, a court "may

14  appropriately infer that a class action settlement is fair, adequate, and reasonable."  *Id.*  "By any

15  standard, the lack of objection of the Class Members favors approval of the Settlement."  *In re*

16  *Omnivision Techs.*, 559 F. Supp. 2d at 1043.

17            5.     The Agreements Are the Product of Good Faith, Arms-Length
18                      Negotiations.

19        The proposed Agreements are the product of protracted arms-length negotiation over the

20  majority of the duration of this case.  Many issues were hotly contested, and the parties

21  negotiated extensively over the content and form of the Agreements.  Smith Preliminary

22  Approval Decl. (Dkt. No. 279-1) ¶¶ 11-22.  The resulting Agreements fully resolve all injunctive

23  relief claims for the class, and explicitly carve out and do not release absent class members'

24   

_____

25  [6] The United States Department of Justice and the United States Department of Education
submitted a Statement of Interest in support of Plaintiffs' Oppositions to Defendants' Motions to
26  Dismiss, Dkt. No. 159, and have been provided with executed copies of the proposed
Agreements.  "[The Class Action Fairness Act] presumes that, once put on notice, state or federal
officials will raise any concerns that they may have during the normal course of the class action
27  settlement procedures."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal.
2015).

28   

1  individual claims for compensatory education or due process.  County Agreement § VI; CCCOE

2  Agreement § 11.2.  Moreover, the parties reached the Agreements with the assistance of an

3  experienced mediator, and did not negotiate Plaintiffs' attorneys' fees or costs until after

4  reaching agreement on the key merits issues.  Smith Decl. ¶ 7.  These circumstances confirm that

5  the Agreements are non-collusive.  *See Bellinghausen*, 306 F.R.D. at 258-59 (citing *Bluetooth*,

6  654 F.3d at 950) (even where "warning signs," such as monetary compensation for counsel but

7  not the class, exist, approval is appropriate where there is no evidence of collusion between the

8  parties); *Satchell v. Fed. Express Corp.*, No. C03-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal.

9  Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms

10  that the settlement is non-collusive.").

11        When considered together, the *Hanlon* factors support a finding that the proposed

12  Agreements are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Moreover, there is no

13  evidence of collusion between the parties.  Final approval is therefore appropriate.

14  **IV.    CONCLUSION**

15        The proposed Agreements will eliminate the use of room confinement at Juvenile Hall

16  for all purposes except the immediate threat of harm to self or others and will open access to the

17  special education services that youth with disabilities need.  As discussed above, these

18  Agreements are a fair, reasonable, and adequate resolution of the claims at issue.  In addition, the

19  parties have provided appropriate notice to class members, and none have objected.  Plaintiffs

20  therefore request that, following the fairness hearing, the Court enter an order granting final

21  approval of the class action settlements pursuant to Federal Rule of Civil Procedure 23(e).

22

23  DATED:  October 29, 2015                     Respectfully submitted,

24                                              DISABILITY RIGHTS ADVOCATES
                                                PUBLIC COUNSEL
25                                              ZELLE HOFMANN MASON & VOELBEL

26

27                                              _____
                                                Mary-Lee Smith
28                                              Attorney for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644