UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

G. F., et al.,

        Plaintiffs,

    v.

CONTRA COSTA COUNTY, et al.,

        Defendants.

Case No.  13-cv-03667-MEJ

**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AGREEMENTS AND GRANTING MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

Re: Dkt. Nos. 292, 303

## INTRODUCTION

The Court preliminarily approved the parties' settlement of this class case on July 30, 2015.  Prelim. Approval Order, Dkt. No. 288.  Now pending before the Court is Plaintiffs' unopposed Motion for Final Approval of the Settlement Agreements (Dkt. No. 303) and Motion for Reasonable Attorneys' Fees and Costs (Dkt. No. 292).  The Court held a final fairness hearing on these matters on November 12, 2015.  Dkt. No. 306.  Having carefully considered the Motions, the relevant legal authority, and the proposed Settlement Agreements and all supporting documents, the Court **GRANTS FINAL APPROVAL** of the Settlement Agreements and **GRANTS** Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs as set forth below.

## BACKGROUND[1]

### A.    Case Background

On August 8, 2013, Plaintiffs G.F. (by and through her guardian ad litem, Gail F.), W.B., and Q.G. filed this action on behalf of themselves and all others similarly situated, alleging discrimination against a proposed class of youth with disabilities who are detained, or will be

---

[1] A more thorough description of the background of this case, the settlement negotiations, and the terms of the settlement agreement can be found in the Preliminary Approval Order.  *See* Prelim. Approval Order at 1-15.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   detained, at the Juvenile Hall located in Martinez, California ("Juvenile Hall").  *See* Compl. at 1-6,

2   Dkt. No. 1; *see also* First Am. Compl. ("FAC") at 1-5, Dkt. No. 87.  In doing so, Plaintiffs sued

3   Defendant Contra Costa County (the "County"), which operates Juvenile Hall through its

4   Probation Department, and is responsible for the care of youth detained there.  FAC ¶¶ 34-35, 61.

5   Plaintiffs also sued Defendant Contra Costa Office of Education ("CCCOE"), in conjunction with

6   the County Probation Department, which operates Mt. McKinley, the public onsite school that

7   provides educational services for youth held at Juvenile Hall.  *Id.* ¶¶ 47, 122.

8         In bringing this action, Plaintiffs assert CCCOE and the County (collectively,

9   "Defendants") have adopted and implemented policies and practices with regard to solitary

10  confinement that have a disparate impact on youth with disabilities.  *Id.* ¶ 297.  Specifically,

11  Plaintiffs alleged that Defendants' solitary confinement policies and practices deny youth

12  educational and rehabilitative services, which disproportionately burdens youth with disabilities

13  who require additional assistance to access the general education curriculum and rehabilitative

14  programs.  *Id.* ¶¶ 2, 9.  Plaintiffs also contend that while Individualized Education Plans ("IEPs")

15  are legally required for youth with disabilities, Defendants have an established policy of simply

16  disregarding those requirements, noting the IEPs in Juvenile Hall are strikingly similar regardless

17  of the students' varying disabilities, needs, and previous IEPs.  *Id.* ¶¶ 134, 150.  Plaintiffs allege

18  Juvenile Hall's IEPs do not consider disability-related behavior that may impact education, and

19  Defendants do not rely on positive behavioral interventions and supports to counter behavior that

20  impedes learning.  *Id.* ¶¶ 166, 169.

21        Plaintiffs filed their Motion for Class Certification contemporaneously with their original

22  Complaint, and subsequently re-filed their motion for class certification following the filing of

23  their FAC on December 24, 2013.  *See* Dkt. Nos. 8-9 (Mot. and Br. in Supp. of. Class

24  Certification), 92-93 (Am. Mot. and Br. in Supp. of. Class Certification).  Plaintiffs' FAC asserts

25  six causes of action against Defendants: (1) violation of the Individuals with Disabilities

26  Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 et seq.; (2) violation of the Americans

27  with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (3) violation of Section 504 of the

28  Rehabilitation Act, 29 U.S.C. § 794, et seq.; (4) violation of California Government Code section

United States District Court
Northern District of California

1   11135; (5) violation of California Education Code for Special Education Requirements, sections

2   56000, et seq.; and (6) violation of California Education Code for General Education

3   Requirements.  FAC ¶¶ 247-342.

4        On January 24, 2014, Defendants filed Motions to Dismiss the FAC, Dkt. Nos. 113, 118,

5   and on February 7, 2014, they filed their Oppositions to Plaintiffs' Motion for Class Certification,

6   Dkt. Nos. 133, 136.  All motions have been fully briefed, but upon notification about the parties'

7   ongoing efforts to reach a settlement, the Court deferred ruling on these motions.

8        After extensive negotiations and the assistance of three experienced mediators, including

9   Magistrate Judge Joseph C. Spero, the parties reached an agreement to settle this case.  Plaintiffs'

10   final agreement with CCCOE ("CCCOE Agreement") was fully executed on May 18, 2015, and

11   their final agreement with the County ("County Agreement") was fully executed on May 19, 2015

12   (collectively, "Settlement Agreements").  Mary-Lee Smith Decl. in Supp. of Prelim. Approval ¶

13   24, Dkt. No. 279-1; *see also* Dkt. No. 279-2 ("CCCOE Agmt."); Dkt. No. 279-3 ("Cty. Agmt.").

14   Plaintiffs filed an unopposed Motion for Preliminary Approval of their Settlement Agreements on

15   June 30, 2015.  Dkt. No. 279.

16   **B.**    **Settlement Terms**

17       1.    <u>The County Agreement</u>

18        Under the County Agreement, Probation Staff will no longer use room confinement for

19   discipline, punishment, administrative convenience, retaliation, staffing shortages or reasons other

20   than a temporary response to behavior that threatens immediate harm to the youth or others.  Cty.

21   Agmt. at 5, § IV(D)(2).  Additionally, Probation Staff is prohibited from placing youth in

22   continuous room confinement for longer than four hours.  *Id.*, § IV(D)(3).  After four continuous

23   hours, Staff must return the youth to the general population, develop "specialized individualized

24   programming" for the youth, or consult with a qualified mental health professional about whether

25   a youth's behavior requires that he or she be transported to a mental health facility.  *Id.*

26        Further, Probation Staff must develop special individualized programming for youth with

27   persistent behavior problems that threaten the safety of youth or staff or the security of the facility

28   and may not use room confinement as a substitute for special individualized programming.  *Id.* at

1   5, § IV(D)(4).  Special individualized programming includes the development of any

2   individualized plan designed to improve the youth's behavior, which is created in consultation

3   with the youth, Contra Costa County Mental Health ("County Mental Health") staff, and the

4   youth's family members, when available.  *Id.* at 5-6, § IV(D)(4)(a).

5         The County Agreement calls for increased coordination between Probation, CCCOE, and

6   County Mental Health through the use of multi-disciplinary team meetings, to be held at least once

7   per month with additional meetings held as needed.  *Id.* at 4, § IV(B).  Among other things, the

8   meetings will address coordination of responses and interventions as well as coordination of

9   special education and counseling services to all eligible youth.  *Id.*, §§ IV(B)(1)-(3).

10        The County will also retain Professor Barry Krisberg as an expert in this matter, and

11  Professor Krisberg will work with Professor Edward Latessa to conduct a review of the County's

12  policies and practices at Juvenile Hall.  *Id.*, § IV(A)(1)-(2).  Specifically, Professors Krisberg and

13  Latessa will review policies and practices relating to: (a) room confinement; (b) use of behavior

14  incentives; (c) coordination between CCCOE and the Probation Department, including but not

15  limited to, the County's coordination with CCCOE on CCCOE's implementation of IEPs, Section

16  504 Plans[2], and behavior intervention plans; (d) identification, assessment and tracking of youth

17  with disabilities who are detained at Juvenile Hall and referral systems to identify these youth for

18  CCCOE and County Mental Health; and (e) the implementation of Juvenile Detention Alternatives

19  Initiative standard V.D.4., which specifies that disability must be considered in determining an

20  appropriate response when assigning consequences.  *Id.*, §§ IV(A)(1)(a)-(e).  Following review by

21  the experts of the above policies and practices, the joint recommendations of Professors Krisberg

22  and Latessa will be submitted to the County and Plaintiffs' counsel, and the County will

23  implement those joint recommendations.  *Id.*, § IV(A)(2).  The County Agreement also sets forth a

24  dispute resolution process if the experts do not agree on recommendations.  *Id.* at 3-4, §§

25  IV(A)(2)(a)-(e).  If the parties are unable to reach a resolution, they may submit the matter for

26  further mediation or to the Court and ultimately the Ninth Circuit if necessary.  *Id.*, § IV(A)(2)(a)-

27

28  _____

[2] Section 504 Plans refer to plans established in accordance with the Rehabilitation Act.

United States District Court
Northern District of California

(d).  Attorneys' fees and costs are permitted to the prevailing party under the Agreement.  *Id.*, § (IV)(A)(2)(e).

The County Agreement consists of two primary phases: the Implementation Period and the Monitoring Period.  The Implementation Period lasts 18 months, allowing for the experts to conduct their review, issue their expert report detailing their findings and recommendations, and for the County to train staff and revise policies to implement those recommendations.  *Id.* at 6, § IV(E).  Following that Period, there will be a Monitoring Period that lasts for 24 months, during which the experts will provide the parties with monitoring reports every six months.  *Id.*  The parties will rely on benchmarks to show the County's compliance with the County Agreement during the initial phase of the Monitoring Period, concluding with the provision that all units will be in substantial compliance with the provisions of the County Agreement.  *Id.*, § IV(E).

The County Agreement provides for the payment of $1,340,000 as full and final settlement of all attorneys' fees and costs related to this case and the named Plaintiffs' individual due process claims, as set forth in *Contra Costa County v. Barbara C.*, Civil Case No. C-14-00268 MEJ, *Contra Costa County v. CiCi C.*, Civil Case No. C-14-00269 MEJ, and *Contra Costa County v. Gail F.*, Civil Case No. C-14-00270 MEJ.  *Id.* at 11-12, § IX.

2.        The CCCOE Agreement

The CCCOE Agreement provides for CCCOE to retain an expert with expertise in: (1) the IDEA; (2) the Rehabilitation Act and the ADA; (3) California state law requirements pertaining to special education; and (4) the operation of juvenile court schools.  CCCOE Agmt. at 2, § 4.1.1.  This expert will conduct a review of CCCOE's policies, procedures and practices in the following areas: (a) Child Find obligations[3] in accordance with the IDEA, related California law, and the Rehabilitation Act for youth with suspected disabilities who are detained at Juvenile Hall; (b) development and implementation of IEPs and Section 504 Plans in accordance with the IDEA,

---

[3] According to Plaintiffs' FAC, "a local education agency ('LEA') has what are called 'Child Find' obligations, which means it must have procedures to identify, locate and evaluate '[a]ll children with disabilities . . . who are in need of special education and related services[.]'  20 U.S.C. § 1412(a)(1)(A); Cal. Educ. Code § 56301(a); *see also* 45 C.F.R. § 84.32(a).  When a LEA identifies a student suspected of having a disability, an initial assessment must be conducted by qualified persons in all areas of suspected disability.  Cal. Educ. Code § 56320."  FAC ¶ 128.

United States District Court
Northern District of California

related California law, and the Rehabilitation Act for all eligible disabled youth detained in Juvenile Hall; (c) discipline in accordance with applicable law for all eligible disabled youth detained in Juvenile Hall; and (d) CCCOE's obligation to coordinate with Probation regarding all matters in which CCCOE and Probation have joint or overlapping responsibilities, in accordance with relevant California law. *Id.* at 3-4, § 4.1.7.

To conduct this review, the CCCOE Agreement gives the expert full and reasonable access to any and all information he or she deems necessary, including: (1) full access to the areas in which CCCOE operates; (2) the ability to talk with, consult with, and interview staff from CCCOE; (3) the ability to observe youth in the classroom setting, attend IEP meetings with the consent of the educational rights holder, observe youth during other special education related services (except for individual counseling services), and review recordings of IEP team meetings; (4) access to CCCOE records, with the exception of private personnel files; and (5) the ability to conduct written surveys of youth detained in Juvenile Hall and to speak with small groups of students as needed. *Id.* at 4-5, § 4.1.8.

Based on this review, the expert will develop a report ("Expert Report") that will include all proposed revisions to policies, procedures, and practices he or she recommends. *Id.* at 5, § 4.1.10. This report will be completed within six months of the commencement of the expert's review. *Id.* Following the issuance of the Expert Report, both Plaintiffs and CCCOE will have an opportunity to challenge any recommendation contained in the report on the basis that it is not required by and/or does not comply with federal and/or state law. *Id.*, § 4.1.11. Once all challenges have been resolved, CCCOE will adopt and implement the report. *Id.*, § 4.1.12. CCCOE shall use best efforts when implementing the Expert Report to coordinate and cooperate with other authorities operating in and providing services at Juvenile Hall, including, but not limited to, the County's Probation Department. *Id.* at 6, § 4.3.1.

Following selection of the Expert and drafting and approval of the Expert Report, there will be a 24-month monitoring term. *Id.* at 5, § 4.1.12. During this time, the Expert will provide the parties with monitoring reports on a quarterly basis for the first 12 months and on a semi-annual basis thereafter with a final report at the end of the monitoring term. *Id.* at 6, § 5.2.

United States District Court
Northern District of California

1    In addition, CCCOE will designate at least one employee at Juvenile Hall as an "ADA

2    Coordinator" who will be responsible for ensuring compliance with the ADA generally and for

3    investigating and responding to any ADA complaints. *Id.* at 6, § 4.2.1.

4    To the extent disputes arise regarding the Expert Report and/or compliance with the

5    CCCOE Agreement during its term, the CCCOE Agreement provides for a dispute resolution

6    process, which may be heard by this Court or appealed further. *Id.* at 7, § 6.2.

7    Finally, the CCCOE Agreement provides for a total payment of $1,165,000 for reasonable

8    attorneys' fees and costs incurred during the course of the lawsuit, to be paid in installments, with

9    $70,000 of this amount put aside to compensate for fees, expenses and costs incurred in

10   monitoring CCCOE's implementation of the Settlement Agreement. *Id.* at 11, §§ 12.2-7.

11   3.    Similar Provisions in Both Agreements

12   Under the CCCOE Agreement, the "Released Injunctive Claims" are "any and all claims,

13   rights, demands, charges, complaints, actions, suits and causes of action, whether known or

14   unknown, suspected or unsuspected, accrued or unaccrued, for injunctive or declaratory relief, that

15   have been brought in the Lawsuit or which could have been brought as educationally-based claims

16   under the ADA, Rehabilitation Act, and/or IDEA, arising from August 8, 2013 through the Term

17   of the Agreement." *Id.* at 10, § 11.2. The Term of the Agreement is defined as "from the

18   Effective Date [i.e., the date of Final Approval] until the completion of the Expert Monitoring

19   Term and issuance of the final Monitoring Report[.]" *Id.* at 8, § 7.1. The County Agreement is

20   similar: the "Released Injunctive Claims" are "any and all claims[,] rights, demands, charges,

21   complaints, actions, suits and causes of action, whether known or unknown, suspected or

22   unsuspected, accrued or unaccrued, for injunctive or declaratory relief, that have been brought in

23   this lawsuit under the IDEA, Section 504, the ADA, California Government Code § 11135 and/or

24   the California Education Code[,] arising from August 8, 2013 through the Term of the

25   Agreement[.]" Cty. Agmt. at 10, § VI. The Term of the Agreement is defined as "from the

26   Effective Date [i.e., the date of Final Approval] until the completion of the Monitoring Period,

27   which shall be the date of the issuance of the final Monitoring Report." *Id.* at 12, § X(A). At the

28   hearing, Plaintiffs' counsel confirmed the "Terms" of these Agreements would last approximately

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    three years to three and a half years, give or take the time built into the CCCOE Agreement to

2    select experts for CCCOE's monitoring.

3        The settlements do not: (1) provide for any monetary relief to be paid to class members;

4    (2) release any individual claims for damages, or otherwise affect the rights of class members to

5    pursue individual claims for compensatory education or other individual relief under the IDEA

6    and/or Section 504 of the Rehabilitation Act; and (3) do not affect any claims for reasonable

7    accommodations related to physical access, communication access, and/or accommodations

8    otherwise relating to hearing, vision and/or mobility disabilities arising under the ADA or the

9    Rehabilitation Act.  CCCOE Agmt. at 10-11, § 11; Cty. Agmt. at 10, § VI.[4]

10       The Agreements provide for the Court to retain jurisdiction for purposes of approval and

11   enforcement of any award of attorneys' fees and costs, as well for purposes of dispute resolution.

12   Cty. Amgt. at 11, § VIII; CCCOE Agmt. at 10, § 10.1; *see also* Stipulation, Dkt. No. 284.

13   **C.    Preliminary Approval**

14       On Preliminary Approval, the Court conditionally certified the stipulated and proposed

15   class for purposes of settlement pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2),

16   defined as:

17           [A]ll youth with disabilities as defined under the ADA and the
             Rehabilitation Act who are currently detained at or who will be
18           detained at the Contra Costa County Juvenile Hall.

19   Prelim. Approval Order at 26; *see also* Cty. Agmt. at 2, § V(B).; CCCOE Agmt. at 2, § 3.2.1.  The

20   Court also appointed Disability Rights Advocates ("DRA") and Public Counsel as class counsel to

21   effectuate the settlement, and Plaintiffs G.F., by and through her guardian ad litem, Gail F.; W.B.;

22   and Q.G as class representatives for settlement purposes only.  Prelim. Approval Order at 26.

23

24   [4] Under the County Agreement, however, the three named Plaintiffs have released their individual
     claims for compensatory education against the County as a resolution of their related individual
25   appeals cases, *Contra Costa County v. Barbara C.*, Civil Case No. C-14-00268 MEJ, *Contra
     Costa County v. CiCi C.*, Civil Case No. C-14-00269 MEJ, and *Contra Costa County v. Gail F.*,
26   Civil Case No. C-14-00270 MEJ. Cty. Agmt. at 10-11, §§ VI-VII. Specifically, the County will
     pay the named Plaintiffs a total of $1,140, representing the amount awarded to them for
27   compensatory education by an administrative judge from the Office of Administrative Hearings
     ("OAH") in their separate individual due process administrative proceedings.  *See* Prelim.
28   Approval Mot. at 4-5 & 10 n.6.  The County will provide these funds in exchange for Plaintiffs
     dismissing their cross appeals of the OAH's decisions.  *Id.* at 10 n.6.

The Court also largely approved the form and content of the proposed Notice of Proposed Settlement of Class Action Lawsuit ("Notice"), Dkt. No. 284-1, as well as the Notice Plan as set forth in the parties' Agreements (CCCOE Agmt. at 8, § 8.4; Cty. Agmt. at 9, § V(F)).  *Id.* at 26-27.

**D.     Post-Preliminary Approval**

Following preliminary approval of the Settlement Agreements, the parties set off to accomplish the Notice Plan, *see* Decl. of Kimberly Smith Confirming Distribution of Notice to Pl. Settlement Class Members ("CCCOE Decl.") ¶ 5(a)-(b), Dkt. No. 300; Decl. of D. Cameron Baker Regarding Distribution of Notice of Settlement ("Cty. Decl.") ¶ 4(b), Dkt. No. 301; Mary-Lee Smith Decl. In Supp. of Pls.' Unopposed Mot. for Final Approval of the Settlement Agmts. ("Smith Final Approval Decl.") ¶ 11, Dkt. No. 304.

Plaintiffs filed their Motion for Reasonable Attorneys' Fees and Costs ("Attys' Fees Mot."), Dkt. No. 292, on September 29, 2015, and subsequently, on October 29, 2015, filed their unopposed Motion for Final Approval of the Settlement Agreements ("Final Approval Mot."), Dkt. No. 303.  The Court held the fairness hearing on these matters on November 12, 2015.  Dkt. No. 306.

### DISCUSSION – FINAL APPROVAL

**A.     Legal Standard**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  Additionally, Rule 23(e) requires the Court to determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable."  *Id.* at 1026; Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.").

United States District Court
Northern District of California

9

To assess whether a settlement proposal is fair, adequate, and reasonable, the Court must generally balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citations omitted). Where a settlement agreement is negotiated prior to formal class certification, it is subject to a higher level of scrutiny, and a court's approval order must ensure that the settlement is not the product of collusion among the negotiating parties. *Id.* at 946-47.

**B.      Adequacy of Notice**

Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." (citation omitted)). "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quotation omitted). The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement. *See, e.g.*, *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1027 (N.D. Cal. 1999).

**1.      How Notice Was Effected**

The Court previously approved (1) the form and content of the proposed Notice, Dkt. No. 284-1; (2) the Notice Plan as set forth in the parties' Agreements in Dkt. Nos. 279-2 (CCCOE Agmt. at 8, § 8.4) and 279-3 (Cty. Agmt. at 9, § V(F)); and (3) the parties' Stipulation at Dkt. No.

United States District Court
Northern District of California

10

284.  Prelim. Approval Order at 26-27.  The Court also ordered the distribution of the Notice to the class be completed by August 21, 2015.  *Id.* at 27.  The parties have largely fulfilled the Notice Plan, as discussed below.

### i.    County's Notice

First, the County posted the approved Notice in visitor areas, in a prominent place in each unit, and in the entrance lobby of Juvenile Hall, commencing on or about August 6, 2015.  Cty. Decl. ¶ 4(b).  Second, the County e-mailed the approved Notice to the Contra Costa County Juvenile Court Judges, the Contra Costa County Public Defender's Office, and the Contra Costa County District Attorney's Office.  *Id.* ¶ 4(a).  Finally, Plaintiffs and the County Department of Probation posted the Notice and proposed Agreement in prominent places on their respective websites on or before August 20, 2015.  *Id.* ¶ 4(c); Smith Final Approval Decl. ¶ 11.

### ii.   CCCOE Notice

First, CCCOE distributed the approved Notice to education rights holders of all youth currently enrolled at Mt. McKinley with an IEP and/or a Section 504 plan, by personal delivery or by First Class U.S. mail to the last known address.  CCCOE Decl. ¶ 5(a)-(b).  CCCOE sent out a total of 65 notices and only two were returned as undeliverable.  Supplemental Declaration of Kimberly A. Smith Regarding Distribution of Notice to Plaintiff Settlement Class Members ("CCCOE Suppl. Decl.") ¶ 4, Dkt. No. 302.  At the Hearing, CCCOE's counsel represented to the Court that it had successfully re-sent one of those previously returned notices, meaning only one notice was ultimately undeliverable.  *See also id.*  In addition, CCCOE posted the approved Notice in each classroom of Juvenile Hall, *id.* ¶ 5(c), and Plaintiffs' Counsel and CCCOE posted the Notice and proposed Agreement in a prominent place on their respective websites, on or before August 20, 2015.  *Id.* ¶ 6; Smith Final Approval Decl. ¶ 12.

### iii.  CAFA Compliance

Defendants provided Notice of the proposed Agreements to the U.S. Department of Justice, the U.S. Department of Education, the Office of Juvenile Justice and Delinquency, the Attorney General for the State of California, the California Department of Education, and the California Board of State and Community Corrections, as required by the Class Action Fairness

1    Act ("CAFA"), 28 U.S.C. § 1715(b), by registered mail sent on July 10, 2015.  Cty. Decl. ¶ 4(d)

2    and Ex. B.  None of these class notices were returned as undeliverable.  *Id.* ¶ 4(d).

3                      *iv.     Website Link Issues*

4            There were a couple problems that arose in posting the Notice and Proposed Settlement

5    Agreements online.  Specifically, around August 4, 2015, the County Department of Probation

6    posted the Notice on its website but did not directly provide the Agreement; instead, the County

7    directed viewers to follow a link to the DRA website to find the proposed Agreement.  *Id.* ¶ 4(c).

8    The County discovered this deficiency on October 2, 2015, and promptly posted the Agreement

9    directly to its website.  *Id.*  CCCOE likewise had a problem posting this information.  Around

10   August 20, 2015, CCCOE posted an announcement of the proposed settlement with a link that

11   opened the Proposed Settlement Agreement, but it was later discovered on September 30, 2015

12   that the link did not include the Notice.  CCCOE Decl. ¶ 6.  CCCOE corrected the website on

13   October 1, 2015.  *Id.*

14           2.       Whether Notice Was Adequate

15           Given the foregoing, the Court finds that notice was directed in a reasonable manner to

16   class members who will be bound by the parties' proposed Agreements.  *See* Fed. R. Civ. P.

17   23(e)(1).  First, the Court previously approved the language of the Notice itself and remains

18   satisfied that the notice describes the terms of the settlement in sufficient detail to alert those with

19   adverse viewpoints to investigate and to come forward and be heard.  *In re Online*, 779 F.3d at

20   946.  Second, the Court finds Defendants' manner of effecting notice "apprise[d] interested parties

21   of the pendency of the action and afford[ed] them an opportunity to present their objections."

22   *Mullane*, 339 U.S. at 314.  While there were some minor issues with the posting of the

23   Agreements on the Defendants' websites, the Court finds these minor mistakes do not detract from

24   the overall reasonableness of the notice effected in this case.  The Court is satisfied that the notice

25   mailed and personally delivered to the education-rights holders, as well as the various postings of

26   the notice in the classrooms and lobby areas ensures class members received reasonable notice of

27   the Settlement Agreements.

28   //

United States District Court
Northern District of California

## C.      Fairness, Adequacy, and Reasonableness

The Court now examines the Settlement Agreements to ensure they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In doing so, the Court considers the settlement factors listed above. As noted, when settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

### 1.      Strength of Plaintiffs' Case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Here, Plaintiffs recognize the multitude of barriers they face to prevail with their claims, including "acknowledg[ing] the novel nature of their class claims" and the obstacles in establishing their claims in light of the uncertainties surrounding class certification and Defendants' Motions to Dismiss. *See* Final Approval Mot. at 9 (citing Smith Final Approval Decl. ¶ 8). Plaintiffs and the Court have previewed Defendants' arguments in those Motions, and there are several contentious issues that threaten Plaintiffs' ability to maintain this case and their class claims. While Plaintiffs maintain the Court would have certified the class and they would have prevailed at summary judgment or trial, the challenges Plaintiffs face in this case weigh in favor of approving the settlement.

### 2.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

Difficulties and risks of litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). According to Plaintiffs, "both parties agree that, absent settlement, this case would involve prolonged and costly litigation, which might last years and involve extensive and complex law and motion practice." Final Approval Mot. at 10 (citing Smith Final Approval Decl. ¶ 9). In addition to the complexities inherent with the claims here, the case is still at a relatively early stage in the proceedings, with potentially years more protracted litigation before trial. Additionally, as Plaintiffs discussed, the issues raised in this case are somewhat novel, which in the Court's experience raises the likelihood

of significant motion practice and often appeals as well.  *See Rodriguez*, 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement.").  Plaintiffs maintain "[t]he proposed Agreements avoid the risk, delay, and cost of further litigation, and allow all parties to participate in fashioning almost immediate relief for young people with disabilities at Juvenile Hall."  Final Approval Mot. at 10.  Given the foregoing, the Court finds this factor weighs in favor of approving the settlement.

### 3.    Risk of Maintaining Class Action Status Throughout Trial

The potential difficulties associated with achieving and maintaining class certification in this case weigh in favor of approving the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851.  At the time the parties executed the Settlement Agreements, the Court had not certified the class, and it is unclear whether certification would have been granted.  Defendants raised a number of forceful challenges to Plaintiffs' operative Class Certification Motion, including moving to strike Plaintiffs' expert.  *See* Dkt. No. 143.  Plaintiffs' Counsel acknowledges that even if the Court originally certified the class, there was a risk that "after granting Plaintiffs' motion [for class certification]" the Court could "later decertify the class."  Final Approval Mot. at 9-10 (citing Smith Final Approval Decl. ¶ 9).  Given these circumstances, the Court finds this factor weighs in slight favor of approving the settlement.

### 4.    Amount Offered in Settlement

The class-wide relief proposed in the Settlement Agreements is wholly injunctive; accordingly, this factor does not have weight in the Court's analysis.

### 5.    Extent of Discovery Completed and the State of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quotation omitted).  Accordingly, courts often "look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case."  *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (citation omitted).

The extent of discovery completed and the stage of the proceedings weigh in favor of final

14

approval.  The parties entered into the proposed Agreements nearly two years after Plaintiffs filed

their Complaint.  *See* Dkt. Nos. 1, 279-2, 279-3.  Before filing, Plaintiffs' counsel conducted an

extensive investigation of policies and practices affecting youth at Juvenile Hall, including

reviewing thousands of pages of documents obtained through Public Records Act requests and

education records requests as well as making numerous visits to Juvenile Hall to meet with

detained youth.  Smith Final Approval Decl. ¶ 6.  Since the action commenced, the parties have

engaged in significant discovery.  Among other things, Defendants produced extensive education

records concerning individual young people held at Juvenile Hall, and each of the named Plaintiffs

have been deposed.  *Id.*  Additionally, the parties have briefed two separate sets of motions to

dismiss and a motion for class certification, and Plaintiffs have pursued administrative

proceedings against the County and CCCOE on behalf of each of the named Plaintiffs.  *Id.*  By the

time the Settlement Agreements were reached, the litigation had proceeded to a point where both

Plaintiffs and Defendants "ha[d] a clear view of the strengths and weaknesses of their cases."

*Chun-Hoon*, 716 F. Supp. 2d at 852.  Approval of the settlement is thus favored.

      6.    <u>The Experience and Views of Counsel</u>

      "Parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec.*

*Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Class Counsel, the DRA and Public Counsel, are well-

qualified litigators with specialized expertise in the fields of disability and education rights.  DRA

has served as lead counsel in over one hundred disability rights class action cases across the

United States and has specialized expertise in class action litigation to improve physical and

programmatic access to governmental programs and activities.  Smith Preliminary Approval Decl.

¶ 6, Dkt. No. 279-1; *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 2010

WL 2228531, at *3 n.3 (N.D. Cal. June 2, 2010) (acknowledging DRA's "extensive experience

litigation ADA class action claims.")  Likewise, Public Counsel's education rights team has

extensive experience in impact litigation to improve access to education services, particularly

special education services.  Laura Faer Decl. in Supp. of Pls.' Mot. for Attorneys' Fees & Final

Approval of Class Settlement Agmts. ("Faer Decl.") ¶¶ 5-9, Dkt. No. 294.

1        Class Counsel consider the proposed Agreements to be fair and reasonable compromises of

2   the disputed issues.  Smith Final Approval Decl. ¶ 10.  They also indicate they are aware of no

3   other class action challenging disciplinary and educational policies and practices in a juvenile hall

4   on the basis of disability discrimination that has resulted in such comprehensive reforms,

5   particularly, the adoption of national best practices found in the Juvenile Detention Alternatives

6   Initiative standards.  *Id.* ¶ 10.  Accordingly, this factor weighs in favor of the settlements.

7            7.       The Presence of a Governmental Participant

8        While the government participants in this case are the Defendants, their support of the

9   settlements nevertheless weights slightly in favor of approval.  Moreover, the United States

10  Department of Justice submitted a Statement of Interest in this case in February 2014 (Dkt. No.

11  159), and it has not objected to the Settlements, despite receiving Notice of the Agreements.  *See*

12  Cty. Decl. ¶ 4(d) and Ex. B.  These facts weigh slightly in favor of the settlements.

13           8.       Reaction of the Class Members to the Proposed Settlement

14        "[T]he absence of a large number of objections to a proposed class action settlement raises

15  a strong presumption that the terms of a proposed class settlement action are favorable to the class

16  members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation

17  omitted).  No class members submitted objections to either the County or CCCOE Agreement.

18  Smith Final Approval Decl. ¶ 13.  There were no other responses received by Plaintiffs' counsel

19  from class members.  *Id.*  Accordingly, this factor weighs in favor of the settlements.

20           9.       Potential Collusion

21        In addition to the eight factors above, where a settlement is agreed upon prior to class

22  certification, the Court must also consider whether the settlement is the product of collusion

23  among the negotiating parties.  *In re Bluetooth*, 654 F.3d at 947.  In its Preliminary Approval

24  Order, the Court found "[t]he settlements in this case appear to be the product of serious,

25  informed, non-collusive negotiations."  Prelim. Approval Order at 22.  In doing so, the Court

26  primarily considered the procedure by which the parties arrived at their settlements.  *See Chun-*

27  *Hoon*, 716 F. Supp. 2d at 852.  In charting out all the various negotiations that took place to settle

28  this case, the Court found these negotiations were "extensive and serious . . . lasting virtually the

United States District Court
Northern District of California

duration of the litigation," but at the same time the "parties continued to vigorously litigate the action, which in turn permitted them to become more informed about the facts of this case." Prelim. Approval Order at 22-23.   Additionally, the Court noted "the Parties did not negotiate Plaintiffs' attorney's fees or costs until after agreement was reached on the key merits issues." *Id.* at 23; *Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion).

In addition to the procedure by which the parties arrived at their settlements, the Court must also look for other signs that may demonstrate collusion, including (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *In re Bluetooth*, 654 F.3d at 947.

The first potential sign of collusion is present here: class counsel seek approximately $2.5 million in fees (Attys' Fees Mot. at 1), while the class receives no monetary compensation under the Settlement Agreements.  The second potential sign of collusion is also present to an extent; while there are no class funds, the Settlement Agreements arrange for class counsel to be paid apart from some of the relief for to the class in the sense that Class Counsel will be paid before the Defendants implement much of the injunctive relief established in the Settlement Agreements after the expert reports.  The third potential sign of collusion is not present: the Settlement Agreements do not provide for fees not awarded to revert to Defendants.  Although two of the potential signs of collusion appear to be present here, their presence is not dispositive; rather, "[w]here a class action settlement results in injunctive relief, the court must ensure that the amount of the requested attorneys' fees does not result in 'less injunctive relief for the class than could otherwise have been obtained.'"  *In re Bluetooth*, 654 F.3d at 947 (quotation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court is reassured the amount of requested attorneys' fees has not resulted in less

2 injunctive relief for the class than could have otherwise been obtained.  First, as noted previously,

3 the fact that the parties only negotiated attorneys' fees after agreement was reached on the key

4 merits issues is favorable in showing class counsel did not allow their attorneys' fees to interfere

5 with the injunctive relief sought for the class.  In support of this fact, Class counsel submitted the

6 Declaration of Mary-Lee Smith, an attorney with the DRA, who states under the penalty of perjury

7 that the parties "did not negotiate Plaintiffs' attorneys' fees or costs until after reaching agreement

8 on the key merits issues."  Smith Final Approval Decl. ¶ 7.  Second, the parties worked with

9 neutral mediators, including Judge Spero (*id*.), which is "a factor weighing in favor of a finding of

10 non-collusiveness," though not dispositive on its own of whether the end product is a fair,

11 adequate, and reasonable settlement agreement.  *In re Bluetooth*, 654 F.3d at 948.  Third, the

12 Agreements provide that Class Counsel can seek addition attorneys' fees in monitoring

13 Defendants' compliance with the Agreements, which indicates the fee amounts provided for in the

14 Agreements are not necessarily class counsel's final settling point and provides incentive to ensure

15 the injunctive relief is fully implemented.  *See* Cty. Agmt. at 11, § IX; CCCOE Agmt. at 6, § 5.3

16 and 11, § 12.4.  Fourth, considering the Settlement Agreements in their entireties, and comparing

17 the relief originally sought in this case to the relief achieved through these Agreements, the Court

18 finds the Agreements largely accomplish the injunctive relief sought in Plaintiffs' First Amended

19 Complaint.  *See* Final Approval Mot. at 7-8.  Finally, the Court has considered Plaintiffs'

20 Counsel's fee request and the reasonableness of those fees in the section below and finds them to

21 be fair and reasonable under the circumstances.

22    In sum, while the attorneys' fees in this case are not insignificant, the Court has not

23 uncovered grounds for finding the requested fees have resulted in less injunctive relief for the

24 class or that there is evidence of collusion between the parties.

25    10.    <u>Summary</u>

26    Given the foregoing analysis, the Court finds that even under heightened scrutiny, the

27 Settlement Agreements are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

28 //

**D.      Certification of the Settlement Class**

In considering Plaintiffs' Preliminary Approval Motion, the Court considered in detail whether all of the elements of Rule 23 are met such that certification of a settlement class was warranted.  *See* Prelim. Approval Order at 16-22.  "Because the Settlement Class has not changed, the Court sees no reason to revisit the analysis of Rule 23."  *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013).

**E.      Summary Regarding Final Approval**

Given the foregoing analysis, the Court finds that Final Approval of the Settlement Agreements is warranted under the circumstances.  The Court now turns to the matter of Plaintiffs' attorneys fees' and costs.

**ATTORNEYS FEES' AND COSTS – DISCUSSION**

**A.      Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Thus, in awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (citations omitted).

In this circuit, there are two primary methods used to calculate reasonable attorneys' fees: the lodestar method and the percentage-of-recovery method.  *In re Online*, 779 F.3d at 949.  The lodestar method is most appropriate where the relief sought is "primarily injunctive in nature," and a fee-shifting statute authorizes "the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."  *In re Bluetooth*, 654 F.3d at 941.[5]  The lodestar represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Hanlon*, 150 F.3d at 1029-30 (explaining that courts employ the lodestar method of calculating attorneys' fees in injunctive

_____

[5] *See also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209-10 (9th Cir. 2013) ("It is not per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients," which is "especially true in civil rights cases, where the dollar amount lawyers recover for their clients is not the sole measure of the results the prevailing parties' attorneys obtained.").

1   relief class actions, multiplying the hours worked by a reasonable hourly rate).  The lodestar figure

2   is a presumptively reasonable fee.  *Clark v. City of L.A.*, 803 F.2d 987, 990-91 (9th Cir. 1986).

3          Because Plaintiffs pursued claims under statutes with fee-shifting provisions—42 U.S.C. §

4   12205 and California Civil Code sections 52(a) and 54.3(a) (*see* Attys' Fee Mot. at 1)—and

5   because the relief sought is injunctive in nature, the Court applies the lodestar method to assess the

6   reasonableness of Plaintiffs' attorneys' fees request.  *See, e.g.*, *Lara v. Renaissance Hotel*

7   *Operating Co.*, 2011 WL 6002521, at *4 (D. Haw. Nov. 29, 2011) ("Although Plaintiffs do not

8   request a lodestar award of attorneys' fees in this case, this Court uses the fees that it could have

9   awarded Plaintiffs under the lodestar analysis as a gauge of the reasonableness of the attorneys'

10  fees provided for in the Settlement Agreement." (citations omitted)).

**B.      Lodestar Analysis**

12         As an initial matter, the Court notes that in the Preliminary Approval Order it required

13  Plaintiffs' Counsel to file their Motion for Attorneys' Fees and Costs by September 29, 2015—

14  two weeks in advance of the deadline for objections, and over one month in advance of the

15  Fairness Hearing.  Prelim. Approval Order at 27.  Plaintiffs' Counsel timely filed their Motion for

16  Attorneys' Fees, and the Court has received no objections to the Motion.  Accordingly, the Court

17  weighs for itself whether Plaintiffs' Counsel's request is reasonable under the lodestar method.

18         Four legal organizations represented Plaintiffs throughout this action: DRA, Public

19  Counsel, Paul Hastings LLP ("Paul Hastings") and Zelle Hofmann Voelbel & Mason LLP[6] ("Zelle

20  Hofmann").  The following chart represents the breakdown of each of the four law firms' lodestar

21  in the Federal Class Action[7]:

---

[6] Paul Hastings withdrew as Plaintiffs' counsel on March 13, 2014, and Zelle Hofmann joined thereafter.  Attys' Fee Mot. at 2 n.1.

[7] Plaintiffs' Counsel provided the numbers and lodestar calculations for their other work on the related administrative actions for the class representatives (Dkt. Nos. 294-5 and 294-6, Exs. E-F to Smith Decl.), but for purposes of this Order, the Court finds it more appropriate to focus on the numbers related to the Federal Class Action (i.e., the litigation apart from the appeals from the administrative hearings), as those numbers apply more concretely to the Court's required analysis under Rule 23(h).  It is possible that the time spent on the administrative actions could be considered under the Rule 23(h) analysis, but the Court finds it unnecessary to consider that data at this point, particularly as the lodestars for the Federal Class Action are well above the fees sought through the Settlement Agreements.

United States District Court
Northern District of California

| Firm[8] | Hours | Rate Range[9] | Avg. Rate | Lodestar[10] |
|---|---|---|---|---|
| Disability Rights Advocates | 5293.6 | $195-$895 | $451.92 | $2,375,735.50 |
| Public Counsel | 772.5 | $175-$570 | $311 | $240,247.50 |
| Zelle Hofmann | 79.6 | $175-$550 | $336.25 | $33,090.00 |
| Paul Hastings | 2548.10 | $205-$975 | $497.33 | $1,606,542.75 |
| **TOTALS:** | 8693.80 | --- | --- | **$4,322,068.75** |

*See* Dkt. No. 293-4 (Ex. D to Mary-Lee Smith Decl. in Supp. of Attys' Fees Mot.).

Plaintiffs did not settle fees and costs separately, and thus the costs are included in the settlement amounts from the Defendants.  The following chart represents the breakdown of each of the four firms' costs related to the Federal Class Action:

| Firm | Costs |
|---|---|
| Disability Rights Advocates | $15,490.94 |
| Public Counsel | $0 |
| Zelle Hofmann | $24.33 |
| Paul Hastings | $76,461.53 |
| **TOTAL:** | **$91,976,80** |

*Id.*

1.   Hourly Rate

First, to determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  In

---

[8] In the co-counsel agreement between Paul Hastings, Public Counsel, and DRA, these entities agreed that if they recovered fees and costs, Paul Hastings would be reimbursed for its out-of-pocket expenses but would donate to Public Counsel and DRA any attorneys' fees obtained as a result of Paul Hastings' work.  "Therefore, the Paul Hastings share of fees . . . will be donated to Public Counsel and DRA."  Carter Decl. ¶ 32, Dkt. No. 296.

[9] DRA, Public Counsel, and Zelle Hofmann seek only their 2014 rates as negotiations began in 2014 and as a concession in the process of settlement; Paul Hastings seeks only its 2013 rates as their participation in the case ended in early 2014.  Attys' Fees Mot. at 12.

[10] The lodestar figures listed here take into account the hours spent by the various attorneys working on the case.  A breakdown of all the hours spent by the various attorneys and related staff on the Federal Class Action is found at Docket Number 293-4, an exhibit to the Declaration of Mary-Lee Smith of DRA.

United States District Court
Northern District of California

considering the reasonableness of Plaintiffs' attorneys' hourly rates, as the Court has noted above, Plaintiffs seek an hourly rate of between $175 per hour and $975 per hour depending on the particular attorney or counsel.  Plaintiffs seek an hourly rate of $845-$975 for two of the most senior and experienced litigators at the DRA, Sid Wolinsky and Laurence Paradis, as well as the most senior litigator working on this case from Paul Hastings LLP, Grace Carter.  The other attorneys' hourly rates fall between $210 and $700.  For non-attorneys, Plaintiffs seek hourly rates of between $175 and $340.

To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *See Camacho*, 523 F.3d at 979. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.*  Consequently, Plaintiffs submit that the relevant community in this case is the San Francisco Bay Area, and the reasonableness of rates charges should be determined by reference to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.  Attys' Fees Mot. at 9-10.

In support of their rates, skill, experience, and reputation, Plaintiffs provided supporting declarations of attorneys from each of the organizations that worked on this case: Declaration of Mary-Lee Smith of DRA ("Smith Decl."), Dkt. No. 293; Declaration of Laura Faer of Public Counsel ("Faer Decl."), Dkt. No. 294; Declaration of Lillian Chen of Public Counsel ("Chen Decl."), Dkt. No. 295; Declaration of Grace Carter of Paul Hastings ("Carter Decl."), Dkt. No. 296; and Declaration of Daniel S. Mason of Zelle Hofmann ("Mason Decl."), Dkt. No. 297. These declarations describe the organization the individual declarant attorney works with, their efforts in this litigation, their methods for calculating their lodestars, as well as the experience, skill, and reputation of the organizations and the individuals who worked on this case.  All of the declarations demonstrate these firms are experienced and tested in the area of complex litigation with strong reputations in the legal community.

In addition, Plaintiffs submitted the declaration of William Alderman, a partner at the San Francisco office of the law firm Orrick, Herrington, & Sutcliffe LLP, who has expertise regarding

prevailing billing rates for Bay Area attorneys who handle complex litigation and is the co-author of the chapter entitled "Fee Arrangements" in West Group's treatise, "Successful Partnering Between Inside and Outside Counsel." Alderman Decl. ¶¶ 1-9, Dkt. No. 298. The majority of his practice focuses on defense of securities class actions and he also is the co-editor of the monthly "Securities Reform Act Litigation Reporter," both of which give him familiarity with attorney fee requests and awards. *Id.* ¶ 10. According to Alderman, the rates requested by Plaintiffs' Counsel are well within the range of market rates for Bay Area attorneys who handle comparable, complex litigation. *Id.* ¶¶ 13-14. Alderman's own hourly rate in 2014 was $995 per hour. *Id.* ¶ 11. Alderman also notes he has personal knowledge of the work and reputation of Mary-Lee Smith and Sid Wolinsky, two attorneys from the DRA, and notes they are "among the leading experts in the country in the area of disability rights." *Id.* ¶ 14.

The Court finds the evidence submitted by Plaintiffs demonstrates that the range of rates requested by the attorneys here are in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience in this District between 2013 and 2014. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals); *see also Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (in a complex action, finding reasonable rates for Bay Area attorneys of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals). While under other circumstances greater scrutiny might be appropriate for some of the hourly rates sought here, the Court is satisfied Plaintiffs' attorneys' hourly rates fall under the range of reasonable fees—particularly as the Court is only analyzing the lodestar figure as a secondary test in order to determine whether the sums already agreed to by the parties are reasonable.

     2.    <u>Hours Expended</u>

Beyond establishing a reasonable hourly rate, a party seeking attorneys' bears the burden to "document[ ] the appropriate hours expended." *Hensley*, 461 U.S. at 437. Such an applicant

must exercise sound "billing judgment" as to the number of hours worked, eliminating excessive, redundant, or unnecessary hours, and provide billing records supporting the time claimed. *Id.* at 433-34. Plaintiffs' counsel "is not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures." *Id.* at 437 n.12; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("plaintiff's counsel can meet his burden—although just barely—by simply listing his hours and 'identifying the general subject matter of his time expenditures.'" (quotation omitted)).

Plaintiffs provided declarations from each of the four organizations working on their behalf, which explain the sorts of things these attorneys worked on and now seek compensation for through this fee request. Plaintiffs note their counsel "devoted a reasonable and necessary amount of time to develop the case and the legal and factual claims, prepare the complaint (and eventually the First Amended Complaint," as well as "fully brief two major motions (i.e., Defendants' motions to dismiss and Plaintiffs' motion for class certification, propound and respond to discovery including defending three named plaintiff depositions, and prepare mediation briefs and settlement proposals for numerous unsuccessful settlement attempts." Attys' Fees Mot. at 15. They further note Plaintiffs' counsel "dedicated substantial resources to obtain the settlement agreements that ultimately resolved the matter[,]" which "included numerous mediations and the drafting of the settlement agreements, for which Plaintiffs' Counsel took the lead." *Id.* Plaintiffs' counsel also "took the lead in drafting the motion for preliminary approval and supporting papers, the class notice, the proposed order, this motion and the application for final approval." *Id.*

In their declarations, each of the four organizations explain they sought fees related to the foregoing activities and tasks related to those activities, including for investigation and research, drafting and editing briefs and related documents, negotiating and structuring the settlement agreements, reviewing documents, interviewing witnesses, preparing and defending depositions, and other such advocacy. *See* Smith Decl. ¶ 18; Faer Decl. ¶ 15; Carter Decl. ¶ 25; Mason Decl. ¶ 13. Additionally, each attorney attests to the fact that they reviewed their organization's time records in this case and independently exercised their billing judgment to eliminate or reduce

United States District Court
Northern District of California

1  certain time that did not appear to be reasonably spent or to otherwise limit their time to that

2  which was reasonable and benefitted the class.  Smith Decl. ¶¶ 19-20; Faer Decl. ¶¶ 16-17; Carter

3  Decl. ¶¶ 23, 26; Mason Decl. ¶¶ 10, 14.  The hours spent on the Federal Class Action for each of

4  the four organizations is as follows: DRA = 5, 293.6 hours (Smith Decl. ¶ 21); Public Counsel =

5  772.5 hours (Faer Decl. ¶ 18); Paul Hastings = 2,548.1 hours (Carter Decl. ¶ 27); Zelle Hofmann =

6  79.6 hours (Mason Decl. ¶ 15).

7        Although Plaintiffs did not provide detailed time records for the attorneys and support staff

8  working on this case, having carefully reviewed the declarations above and the supporting

9  documentation, the Court finds Plaintiffs have met their burden of demonstrating the

10  reasonableness of the time their counsel expended on this litigation.[11]  There has been no

11  challenge to the time spent by these organizations, and the Court cannot find grounds for further

12  reducing the hours spent in this litigation.[12]  In the Court's own first-hand interactions with

13  Plaintiffs' counsel and their work, the Court has found them consistently well-prepared and

14  thorough.  Accordingly, the Court finds the number of hours spent by attorneys and related staff in

15  these four organizations was reasonably expended on the litigation and settlement of this case.

16        3.    <u>Summary of Lodestar and Cost Comparison to Settlement Agreement Amounts</u>

17        As noted above, the total lodestar for the four organizations working on Plaintiffs' Federal

18  Class Action totals $4,322,068.75 and the costs total $91,976.80.  Plaintiffs have only requested

19  that the Court approve the amounts proposed in the parties' Settlement Agreements, i.e., the

---

[11] Former Supreme Court Justice Sandra Day O'Connor, sitting by designation, has emphasized the overall equitable nature of fee analysis: "[t]he net result of fee-setting jurisprudence . . . is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2007) (O'Connor, J., sitting by designation, joining in the opinion) (citation omitted).  Supreme Court Justice Elena Kagan has recently echoed these sentiments: "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011).

[12] As noted earlier, the Court has chosen not to consider the time spent on the administrative actions for the individual class representatives.  Adding the time spent on the administrative actions adds hundreds of thousands of dollars to Plaintiffs' attorneys' lodestar amount.  *See* Dkt. Nos. 293-5 and 293-6 (charts demonstrating the hourly rates, hours worked, and costs of the attorneys working on the administrative actions).

$1,165,000 from CCCOE and $1,340,000 from the County for a total of $2,505,000.  That amount is significantly less than what these attorneys might otherwise be entitled to under the lodestar analysis or if Plaintiffs' costs were included.[13]  Given the significant reduction in fees and costs, the Court finds Plaintiffs' request for attorneys' fees and costs reasonable under the circumstances.

## CONCLUSION

In light of the foregoing analysis, the Court **GRANTS FINAL APPROVAL** to the Settlement Agreements in this case and **GRANTS** Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs in the amounts specified in the parties' Settlement Agreements.

The Court thus **ORDERS** the following:

1.      For the reasons set forth in the Order Granting Preliminary Approval, Dkt. No. 288, the Court confirms class certification of the class for settlement purposes only.

2.      The Court confirms the appointment of Plaintiffs G.F., by and through her guardian ad litem, Gail F.; W.B.; and Q.G as class representatives.

3.      The Court confirms the appointment of Disability Rights Advocates and Public Counsel as Class Counsel.

4.      In accordance with the terms of the settlement agreement between Plaintiffs and Defendant County, the County shall pay Plaintiffs' Counsel $1,340,000 within 60 days of the date of this Order.

5.      In accordance with the terms of the settlement agreement between Plaintiffs and Defendant CCCOE and the stipulation amending the terms of the settlement agreement (Dkt. No.

---

[13] Plaintiffs included very little detail about their costs in this litigation; potentially this is because they already agreed to amounts for fees and costs in their Settlement Agreements.  Given the fact that Plaintiffs' attorneys' lodestar for the Federal Class Action is so much more than they recovered through the amounts assigned in the Settlement Agreements, it seems unnecessary for the Court to proceed with the typical analysis to assess the reasonableness of Plaintiffs' costs under Rule 23(h).  *See* Fed. R. Civ. P. 23(h). ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *see also* Newberg on Class Actions § 16:10 (5th ed.) ("[R]ecoverable nontaxable costs include counsel's out-of-pocket expenses that would normally be charged to a fee paying client."); *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (permitting recovery of costs for "an expense that would normally be charged to a fee paying client.").  In other circumstances, the Court might have difficulty determining whether to award costs authorized by the parties' agreement without greater explanation about what those costs were.  Nonetheless, considering the entirety of the Settlement Agreements in comparison to Plaintiffs' attorneys' lodestar and requested costs, the Court is satisfied that it may issue such an award under Rule 23(h).

United States District Court
Northern District of California

283), CCCOE shall pay Plaintiffs' Counsel on the following schedule: (1) the first installment of $435,000.00 is payable within 60 days of the date of this Order; (2) the second installment of $435,000.00 is payable on July 1, 2016; and (3) the third installment of $295,000.00 is payable on July 1, 2017.

6.      The above-captioned action is **DISMISSED** on the merits and with prejudice, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreements.

7.      The Court retains continuing jurisdiction over this matter for purposes of enforcement and for purposes of dispute resolution, including disputes related to the final monitoring report with the County and the Expert Report with CCCOE, and to determine and enforce the amount of an award of attorneys' fees and costs to which Class Counsel is entitled, including fees and costs resulting from the litigation to-date and from any future dispute resolution.

8.      Judgment is hereby entered on the terms set forth above.  The Clerk of Court shall close the file on this matter.

**IT IS SO ORDERED.**

Dated: November 25, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge